In Equity.

BOARD OF POLICE OF THE CITY OF BIDDEFORD et als.,

*vs.*

THE INHABITANTS OF THE CITY OF BIDDEFORD.

York.     Opinion December 24, 1908.

</div>

*City of Biddeford. Police Board. Orders Drawn by Police Board, City may Refuse Payment of such Orders, When. Special Laws, 1893, chapter 625, sections 4, 6. U. S. Constitution, Article IV, section 2, paragraph 2.*

Under a statute requiring a municipality to pay all the expenses of its police department "upon the requisition" of the Board of Police constituted by the statute, the municipality is not obliged to pay the naked negotiable order or warrant of the Board which does not upon its face or by accompanying papers show what expenses the order or warrant is drawn for.

In equity.     On report.     Bill dismissed.

Bill in equity brought by the "Board of Police of the City of Biddeford,.by Henry G. Hutchinson and James F. Tarr, a majority of the members thereof, in behalf of said Board, and also in behalf of Charles B. Harmon, James Mogan, Napoleon Ducharme, George E. Clark, Frank W. Dearing, John Hanson, George A. Bowie, Gideon A. Boutin, George W. Wormwood, William Fanning. Joseph Cote, John W.. Hayes, William Dunn and Joseph Cormier, all of Biddeford in the County of York and State of Maine, and the

last named fourteen individuals in their own behalf," "against the Inhabitants of the City of Biddeford, a municipal corporation duly created and existing by law within the County of York and State of Maine," praying for a decree that the defendant city should pay certain orders issued by the Board of Police. The defendant city filed an answer with a demurrer therein inserted.

When this cause came on for hearing, it was reported to the Law Court "on bill, answer and demurrer."

The case is stated in the opinion.

*Cleaves, Waterhouse & Emery,* for plaintiffs.

*Robert B. Seidel, and George F. & Leroy Haley,* for defendant. city.

SITTING:    EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

EMERY, C. J.    By chapter 625 of the Special Laws of 1893 the legislature transferred from the Mayor, Aldermen and Council of the city of Biddeford to a Board of Police, the appointment and control of the police force of that city. This Board of Police is composed of three members, the Mayor being one. and the other two appointed by the Governor. By section four of the act, the city is to provide suitable rooms for the Board and such suitable accommodations for the police as the Board should require. Another provision in that section is as follows : "All expenses for the maintenance of said rooms, the pay of the police and all incidental expenses incurred in the administration of said police shall be paid by said city upon the requisition of said board." By section six, the board is to make report annually in December to the Governor and to the City Council of the city. Its records are to be open to the inspection of the Governor or to such persons as he may designate.

On March 18, 1908, two members of this Board of Police issued to Charles B. Harmon, a member of the police force, an order or warrant of the following tenor to wit.

"Board of Police of the City of Biddeford.

$34.                    Biddeford, Maine, March 18, 1908.

To THE CITY OF BIDDEFORD.

You are hereby called upon and required . to pay to Charles B. Harmon or order the sum of thirty-four dollars and charge the same to the account of

<div align="center">

Police Department,

H. G. HUTCHINSON,

JAMES E. TARR,
</div>

No. 2976.                                   Board of Police."

The other member of the Board, the Mayor, did not sign the document.

The city authorities refused to pay this order or warrant until they should be officially informed what it was for. Thereupon Mr. Harmon and other policemen in like situation brought this bill in equity against the city for a decree that the city shall pay this and all such orders from the Board of Police without further audit or question.

It is to be noted that the order itself gives no information as to what it was given for, and that the records of the Board issuing the order are not open to the inspection of the city officials. The case for the plaintiffs, therefore, is necessarily based on the proposition that the Board of Police can issue naked negotiable drafts or warrants upon the city which the city must pay without question and without information as to what bills or claims they are for, or whether they are within the jurisdiction of the Board. We do not think the Act constituting the Board of Police confers such an unusual, unchecked and dangerous power. The city, of course, must pay the lawful expenses of the Board and of the police, including rooms and salaries, upon the requisition of the Board of Police, but it is nevertheless entitled to know that the money is for such lawful expenses and salaries. In this case it is entitled to know what it is paying Mr. Harmon for, whether for salary, or for supplies, and if supplies, what supplies, or whatever else it may be for. Assuming, what does not appear on the face of the order, that it is

for the amount of a bill or claim presented by Mr. Harmon to the Board and allowed by them, yet the city is entitled to know what the bill is for, to know that it is a bill within the jurisdiction of the Police Board to audit and draw an order for.   To hold otherwise is to hold that the legislature has put the treasury and taxpayers of Biddeford in the power of two irresponsible men not of their own choice, irresponsible in that they give no bond, are not accountable to the city, and their doings are not open to inspection by the citizens or city council of the city; is to hold that if these two men issue in the name of the Board of Police naked orders upon the city in payment of claims against themselves personally, or for any other unlawful purpose, the city must pay the orders without question. That such could be a consequence of the plaintiff's theory shows its error.

It is true that the language of the statute is that the city shall pay "upon the requisition of the Board" but that language in its connection does not mean that the city must pay whatever order or warrant for money a majority of the Board may choose to issue. Granting that the Board may requisition the payment of the salaries and other expenses of the police, it does not follow that they can requisition money out of the city treasury upon their mere naked order or warrant.   The city still has the right to know what is the occasion for the issue of the order, whose and what claim the money is to pay, and to refuse payment if it does not appear that the claim is one within the jurisdiction of the Police Board to allow against the city.   For instance, the salaries of the policemen are left by the Act to be fixed by the city, except that they shall not be fixed below a certain amount without the consent of the Board of Police; and the number of policemen that the Board can appoint is limited to a certain number except by consent of the city.   Upon the plaintiff's theory, the board can nevertheless compel the city to pay any sums for salaries and for as many men as it chooses to appoint.

In the extradition clause of the U. S. Constitution, Art. IV, sec. 2, par. 2, the language is that the executive of one State "shall on demand" of the executive of another State deliver up a person charged with having committed a crime and fled from justice in that

State.    Nevertheless, a mere demand is not sufficient.    The execu-
tive upon whom the demand is made has the right to know whether
and with what crime the person demanded is charged, and these
must appear upon the face of the extradition papers.    *Roberts* v.
*Reilly*, 116 U. S. 80.

<div align="right">*Bill dismissed with costs.*</div>