## ROBERTS v. REILLY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

Argued November 20, 1885.—Decided December 14, 1885.

Appeals in cases of habeas corpus from the final decision of a District Court, or of a judge thereof, may, within the discretion of the court or judge, be sent to the appellate tribunal, at a term of the Circuit Court current at the time when the appeal is taken, under regulations adapted to secure justice.

An appeal from the final decision of a District Court or of a judge thereof in a habeas corpus case may be heard by the Circuit Justice at chambers, when it appears that the order therefor is made without objection, and for the convenience of parties, and that the parties appear and are heard and no objection is taken at the hearing, and that no hardship or injustice follows. An objection thereto under these circumstances is too late if taken for the first time in this court.

On the application of an alleged fugitive from justice (detained under authority of the executive of the State where he is found in order to be surrendered to the executive of the State in which the crime is alleged to have been committed), to be discharged on a writ of habeas corpus, it is a question of law, whether he is substantially charged with the commission of a crime against the laws of the latter State ; but the question whether he is a fugitive from justice is one of fact, the decision of which by the governor of the State in which he is found is sufficient to justify the removal—at least until overthrown by contrary proof.

The question whether a corporation is capable in law of ownership of property, the subject of a larceny charged, is not a question which can be raised in proceedings in habeas corpus for the discharge of an alleged fugitive from justice held for surrender to the executive of the State in which the crime is alleged to have been committed.

If the governor of the State from which the delivery of a fugitive from justice is demanded does not require a certified copy of the law of the State against which the crime is charged to have been committed, the prisoner cannot take advantage of the omission in proceedings in habeas corpus for his discharge.

It is discretionary with the State upon which demand is made for surrender of a fugitive from justice to surrender him, even if the allegations charge acts done by him in the State, surrendering which amount to a crime by its laws.

A person who, having committed, within a State, an act which by its laws constitutes a crime, is, when sought for to be subjected to criminal process to answer therefor, found without that State and within the territory of another State or Territory, a fugitive from justice within the meaning of that term as used in the Constitution of the United States.

The record in this case showed the following state of facts:

On April 30, 1885, the appellant Roberts presented his petition to the judge of the District Court for the Southern District of Georgia, and filed the same in the office of the clerk, alleging that he was illegally restrained of his liberty by the appellee, Reilly, who claimed to be acting as an agent of the State of New York, and as such to hold the petitioner, under color of the authority of the United States, by virtue of an arrest made in pursuance of an executive warrant issued by the governor of Georgia, on a requisition from the governor of New York, reciting that the petitioner had been indicted in the State of New York and was a fugitive from the justice of the latter State. He averred that the custody by which he was restrained of his liberty was illegal, for various reasons assigned, and prayed for the writ of *habeas corpus.* The writ was issued as prayed for, and duly served, and thereupon an amendment to the petition was filed, as follows:

"And now comes the said William S. Roberts, and, by leave of the court first had, amends said petition, and says that he is restrained of his liberty, in violation of a law of the United States, viz., the Act of February 12, 1793, section 5178 of the Revised Statutes of the United States, in this: that it appears from the record, now here to your honor shown, upon which the executive warrant under which he is now restrained issued, that the crime with which he is charged was committed in the State of Georgia; that the papers accompanying the demand

of the governor of New York are not authenticated, as required by that act; that it nowhere appears that the relator was personally within the limits of the State of New York at the time when said alleged crime is stated to have been committed; that it nowhere appears that any evidence was before the governor of New York, at the time he issued his demand, that relator was personally within the limits of New York State when the crime is alleged to have been committed."

The defendant Reilly, on May 2, 1885, filed his answer and return, under oath, to the writ of *habeas corpus*, which had been issued and served upon him, as follows:

"UNITED STATES OF AMERICA,
    *Southern District of Georgia, Eastern Division:*
"Pursuant to a writ of *habeas corpus*, issued by the Hon. Emory Speer, judge of the District Court of the United States for the Southern District of Georgia, served upon me, I herewith produce the body of William S. Roberts, and return as the cause of his detention the executive warrant of the Governor of the State of Georgia under which he was delivered to me by authority issued to me by Hon. D. B. Hill, Governor of the State of New York, April 22, 1885, here to the court shown, copy of which is annexed, under which I still hold him, I having, as agent of the State of New York, received said Roberts from Wilberforce Daniel, sheriff of the county of Richmond, to be carried to the State of New York, there to be dealt with according to law; that a certified copy of the indictment found for grand larceny in the State of New York, with evidence of fleeing from justice after commission of the crime, were produced by respondent as received from the governor of New York and delivered to the governor of Georgia, and retained in his office at the time of the issuing of the executive warrant under which the said Roberts was placed in possession of the respondent by the sheriff of Richmond county.

"I further return that on April 26, 1885, after the delivery of the said Roberts to me by the sheriff of Richmond county, I was served with a writ of *habeas corpus* issued by the Hon.

H. C. Roney, judge of the Superior Court of the Augusta circuit, of which circuit the county of Richmond is a part, and by his order required to produce the said Roberts before him April 27, 1885; that from that date until May 1, 1885, I held the said Roberts subject to the order of the said judge, who at said time remanded him into my custody, a certified copy of which proceedings, with the judgment thereon dismissing the writ and remanding him into my custody, is here to the court shown.

"Whereupon this respondent prays that the said writ may be dismissed at the costs of the relator."

On the hearing before the District Court, documents were put in evidence, and constituted a part of the record, as follows:

1. The authority given by the governor of New York to the respondent, as agent of the State, to take and receive the prisoner as a fugitive from justice and convey him to the State of New York to be dealt with according to law.

2. A copy of the requisition of the governor of New York upon the governor of Georgia, as follows:

"STATE OF NEW YORK, EXECUTIVE CHAMBER.

"David B. Hill, Governor of the State of New York, to his Excellency, the Governor of the State of Georgia:

"Whereas it appears by a copy of an indictment, which I certify to be authentic and duly authenticated, in accordance with the laws of this State, that William S. Roberts stands charged with the crime of grand larceny in the first degree, committed in the county of New York, in this State, and it has been represented to me that he has fled from justice of this State, and may have taken refuge in the State of Georgia; now, therefore, pursuant to the provisions of the Constitution and laws of the United States in such cases made and provided, I do hereby require that the said William S. Roberts be apprehended and delivered to Philip Reilly, who is authorized to receive and convey him to the State of New York, there to be dealt with according to law.

"In witness whereof I have hereunto signed my name and

affixed the privy seal of the State, at the city of Albany, this twenty-second day of April, in the year of our Lord, one thousand eight hundred and eighty-five.

[Seal of the State of New York.]          DAVID B. HILL.

"By the Governor: WILLIAM G. RICE,

*Private Secretary."*

3. A copy of the application for this requisition made by the district attorney of the county of New York, accompanied and supported by affidavits of Wm. W. Thurston and others, giving in detail the circumstances of the alleged offence, and averring that the prisoner, and one Walton, charged with him, had fled from the justice of the State of New York and were to be found in Georgia.

4. A copy of the indictment, as follows:

"Court of General Sessions of the Peace of the City and County of New York.

The People of the State of New York

*against*

William S. Roberts and Edward H. Walton.

"The grand jury of the city and county of New York by this indictment accuse William S. Roberts and Edward H. Walton of the crime of grand larceny in the first degree, committed as follows: The said William S. Roberts and Edward H. Walton, each late of the first ward of the city of New York, in the county of New York aforesaid, on the fourteenth day of February, in the year of our Lord one thousand eight hundred and eighty-four, at the ward, city, and county aforesaid, with force and arms, ten written instruments and evidences of debt, to wit, the bonds and written obligations issued by the Georgetown and Lane's Railroad Company, a corporation duly existing under the laws of the State of South Carolina, and called 'first mortgage bonds,' in and by each of which the said railroad company acknowledged itself indebted to the bearer thereof in the sum of one thousand dollars, and which said sum the said railroad company thereby promised to pay on the first day of January, in the year of our Lord 1913, with interest,

the same bearing date on the first day of January, in the year of our Lord 1883, and being. then and there each duly signed by the president and secretary of the said railroad company, and sealed with the seal thereof, and numbered nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, and eighteen, respectively, and being then and there in full force and effect, and wholly unsatisfied, and of the value of one thousand dollars each, (a more particular description of which said bonds and written obligations is to the grand jury aforesaid unknown,) of the valuable things, evidences of debt, goods, chattels, and personal property of the Bethlehem Iron Company then and there being found, then and there feloni-. ously did steal, take, and carry away against the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity.

"RANDOLPH B. MARTINE,
*District Attorney.*"

Indorsed on back of indictment:

" Filed 10 day of April, 1885.   The People *vs.* William S. Roberts and Edward H. Walton,.   Grand larceny, 1st degree. Sections 528, 530, 540, Penal Code.   Randolph B. Martine, District Attorney.

" A true bill.

"HENRY A. OAKLEY, *Foreman.*

" Witnesses: W. W. Thurston.
W. P. St. John."

The foregoing were certified by the secretary of the Executive Department of Georgia to constitute a true and complete transcript or copy of papers of [on] file in that office in the matter of the requisition for William S. Roberts by the governor of New York upon the governor of Georgia.

5. The executive warrant of the governor of Georgia, with the return of the execution thereof by the sheriff, as follows:

" State of Georgia, by Henry D. McDaniel, Governor of said State, to all the sheriffs and constables thereof, greeting:

" Whereas his excellency, David B. Hill, Governor of the

State of New York, and as the executive authority thereof, has demanded of me as the executive authority of this State, William S. Roberts, as a fugitive from justice from the State of New York, and has moreover produced a copy of indictment charging the said William S. Roberts with having committed in the said State of New York the crime of grand larceny in the first degree, which copy [of] indictment is duly certified as authentic by his excellency the governor of the State of New York, and has also appointed and commissioned Philip Reilly agent on the part of the State of New York to receive said fugitive from the civil authorities of this State, to the end that he may be carried to the State of New York, there to be dealt with according to law; and whereas it is suspected that the said fugitive from justice is now within the jurisdictional limits of this State :

"Now, in accordance with the provisions of an act of Congress, passed the twelfth day of February, seventeen hundred and ninety-three, respecting 'fugitives from justice,' and in order that the said William S. Roberts may be brought to trial for the offence for which he stands charged, you are hereby commanded to arrest and deliver him to the said Philip Reilly, agent as aforesaid, so that he may be carried to the State of New York, within whose jurisdiction said offence is alleged to have been committed ; and I moreover charge and require all officers, both civil and military, in this State, to be vigilant in endeavoring to apprehend the said William S. Roberts, fugitive as aforesaid.

"Given under my hand and the seal of the Executive Department, at the capitol, in Atlanta, this 25th day of April, in the year of our Lord one thousand eight hundred and eighty-five, and of American Independence the one hundred and ninth.

[SEAL.]                    HENRY D. McDANIEL, *Governor.*
"By the Governor :      HOWARD E. W. PALMER,
                                *Secretary, Executive Department.*"

*Sheriff's Return.*

"GEORGIA, *Richmond County :*

"Executed the within warrant by arresting William S.

Roberts, and delivering him, pursuant to the mandate of the governor, to Philip Reilly, agent on the part of the State of New York, at one p. m., April 26th, 1885.

W. DANIEL, *Sheriff R. C. Ga.*"

6. A transcript of the record of certain proceedings in the Superior Court of Richmond County in *habeas corpus*, on a petition therefor presented by the said William S. Roberts on April 26, 1885, the return thereto of the said Philip Reilly, and the order of the court thereon, rendered May 1, 1885, remanding the petitioner to the custody of the said Reilly, under the executive warrant of the governor of Georgia, issued in pursuance of the requisition of the governor of New York, heretofore set out.

7. An affidavit of W. S. Roberts, setting forth the facts of the transaction imputed to him as a crime, and on which the indictment is based, and denying the truth of the charge. It also denied that he was in New York on the day laid in the indictment as the date of the offence, and denied that he was in that State after indictment found or that he fled therefrom. And in support of these averments an affidavit of E. H. Walton was also made and filed.

On May 4, 1885, the matter was heard by the judge of the District Court on these pleadings and proofs, when it was ordered and adjudged that the writ be disallowed, and that the petitioner be remanded to the custody of the respondent.

Thereupon, on May 5, 1885, the following order allowing an appeal was made and entered in the District Court:

" In the District Court of the United States for the Southern District of Georgia, Eastern Division.

"*In Re* Petition of WILLIAM S. ROBERTS.

" The judge of the District Court having rendered a final decision in said case dismissing said writ and remanding said petitioner, and said petitioner having prayed that an appeal be taken in his behalf to the next Circuit Court for said district, in which said cause may be heard in accordance with the statute in that behalf enacted, after argument had it is considered

and ordered that an appeal be, and the same is hereby, allowed upon the following terms and under the following regulations :

"That the said William S. Roberts be taken into the custody of the United States marshal for the said Southern District of Georgia, to be by him safely kept, and that the said William S. Roberts do execute and deliver a good and sufficient bond in the sum of ten thousand dollars, with security, to be approved by the judge of said District Court, which said bond, when approved, shall be filed with the clerk of said Circuit Court, and shall be conditioned as follows : That the said William S. Roberts do deliver himself up to the marshal of said southern district, and do appear before the Circuit Court whenever and wherever ordered by this court, or by the said Circuit Court, and do then and there abide by and perform the judgment of the Circuit Court in the premises.

" And that the said William S. Roberts do cause to be sent to the said appellate tribunal a transcript of the petition, writ of *habeas corpus*, return thereto, and other proceedings and documents and affidavits in said cause, immediately on execution of said bond. And that upon the execution and approval of said bond as aforesaid, and the tender of the same, the said William S. Roberts be discharged from the custody of said marshal and allowed to go free, subject to the terms of this order or the final decision of said appellate court.

" In open court, May 5th, 1885.

EMORY SPEER, *U. S. Judge.*"

On May 16, 1885, the relator, William S. Roberts, filed, in the clerk's office of the Circuit Court for the Eastern Division, Southern District of Georgia, at a stated term of said court, begun and holden in the city of Savannah, on the second Monday in April, 1885, a transcript of a record, on appeal from the District Court, of the foregoing proceedings and order, having previously given the bond on appeal required thereby.

Afterwards an order was made in the Circuit Court, the district judge presiding, directing the clerk to transmit a transcript of all the proceedings in the cause to the circuit justice, at Atlanta, Georgia, that the same might be heard before him on

May 18, or as soon thereafter as the same could be heard. Accordingly on May 19, the matter was heard before Mr. Justice Woods, at Atlanta, when and where the parties appeared, the petitioner and appellant by counsel, his personal presence being excused by reason of physical disability. The following order was thereupon made, and entered on the minutes of the Circuit Court :

"In the matter of appeal of Wm. S. Roberts from the decision of the District Judge of the United States for the Southern District of Georgia, Eastern Division, under petition for *habeas corpus* against Philip Reilly :

"This case came on to be heard before me pursuant to the order of the Circuit Court of the United States for the Southern District of Georgia, Eastern Division, dated May 15th, 1885, to which court an appeal was allowed May 5th, 1885, and which was perfected upon the execution of a bond approved by the district judge, and filed May 7th, 1885.

"After argument heard, it is ordered that the judgment of the district judge of May 4th, 1885, 'that the writ is disallowed, and the petition of the relator be dismissed, and that he be remanded to the custody of Philip Reilly,' be, and it is hereby, affirmed at the costs of the relator.

"It is further ordered that this order be entered on the minutes of the Circuit Court of the United States for the Southern District of Georgia, Eastern Division, and a certified copy transmitted to the district judge of the United States for the Southern District of Georgia, Eastern Division, for enforcement by him of his judgment of May 4th, 1885.

"It further appearing that sufficient cause was shown before me for the non-appearance of the relator, it is ordered that no liability rest upon the sureties upon the bond filed May 7th, 1885, for such non-appearance, but that said bond remain of full force until complied with by the delivery of the relator to the United States marshal to be turned over to said Philip Reilly, or such other duly constituted agent as may be appointed by the governor of New York to receive him.

"It is further ordered that the relator have leave to apply

to the district judge for stay of his order of May 4th, 1885, until physically able to be removed, and that for the cause shown in the affidavit of Henry F. Campbell of May 18th, 1885, submitted at the hearing, and now ordered to be filed, the delivery of the relator to Philip Reilly to be made by the marshal of Georgia, the obligee in the bond, be stayed until June 19th, 1885.

"May 19th, 1885.                     W. B. Woods,
                                          *Circuit Justice.*"


Thereupon the relator, Roberts, filed in the Circuit Court, on June 20, 1885, his petition, praying an appeal from this order and judgment to this court, which was allowed; and it was ordered "that the clerk of the United States Circuit Court for the Southern District of Georgia, Eastern Division, do send up to the October Term, 1885, of the Supreme Court of the United States a transcript of the petition, writ of *habeas corpus*, return thereto, and other proceedings in said cause. Further ordered, that the judgments heretofore had in the cause remanding said Roberts into the custody of said Reilly be, and the same are hereby, superseded until the final decision of the Supreme Court can be had in the case, and that the bail of said Roberts retain him in their custody and produce him to answer whatever decision the Supreme Court may render in the cause, or if his bail have surrendered him into the custody of the United States marshal, that said marshal hold him to be produced to answer said judgment, with liberty to said Roberts to give a new bond in the sum of $10,000, with surety, to be approved by the undersigned (the circuit justice), conditioned for his appearance to answer said judgment."

The appeal to this court having been perfected, the appellant filed the following assignment of errors:

"Afterwards, to wit, on the second Monday of October, in this same term, before the Justices of the Supreme Court of the United States, at the Capitol, in the city of Washington, came the said William S. Roberts, by W. W. Montgomery, his attorney, and says that in the record and proceedings aforesaid there is manifest error in this, to wit, that by the record

aforesaid it appears that an order was passed referring said cause to Judge Woods, to be heard by him in vacation, said order having been passed at a term of said Circuit Court which was in session when the appeal from the district judge was allowed, whereas appellant insists that the appeal from the district judge was to the term of said Circuit Court next after the judgment of the district from which the appeal was taken. Appellant further insists that no hearing could be had in vacation unless the record shews on its face that such hearing was had by consent of parties. Appellant further insists that the judgment of his honor Judge Woods was error, because there was no evidence showing that the relator had ever been in New York since the alleged commission of the crime, or at the time of its commission, which was not fully rebutted; and again, because no copy of the laws of New York was submitted to the governor of Georgia shewing what constituted grand larceny under the laws of New York.

"And again, because no copy of the laws of New York was submitted to the governor of Georgia shewing that by such laws the indictment was sufficient, it manifestly appearing that said indictment did not charge any crime by the rules of the common law.

"And again, because the evidence submitted to the governor of Georgia shewed that, if any crime was committed, it was committed in Georgia, and not in New York.

"And again, because it nowhere appears that the affidavits accompanying the requisition of the governor of New York were sworn to before officers authorized to take them.

"And the said Roberts prays that the said several judgments herein complained of may be reversed, annulled, and altogether held for naught, and he be discharged from custody and restored to all rights which he has lost by reason of the said executive warrant of the governor of Georgia and the judgments complained of."

And afterwards, the counsel for the appellant filed additional assignments of error, as follows:

"That the Circuit Court erred in not discharging appellant, for the reason that the affidavits on which the requisition of

the governor of New York is found are not authenticated by him.

"And again, because the warrant of the governor of Georgia does not state upon what evidence it is issued, or that the governor was satisfied from the testimony that a case was made which required him to exercise the power of extradition conferred upon him by the United States Constitution and the Act of Congress.

"And again, because the affidavits on which the indictment and requisition mainly rest are taken before the leading counsel of the prosecution in the case, such counsel acting as a notary public.

"And again, because the facts show a crime under the laws of Georgia, which, even if they show a crime under the laws of New York also, take the case out of the operation of the extradition laws."

*Mr. W. W. Montgomery* for appellant.

*Mr. Frank H. Miller* and *Mr. Daniel Lord, Jr.,* for appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

There is nothing in the Revised Statutes, § 763, providing an appeal in cases of *habeas corpus* to the Circuit Court from the final decision of the District Court, or the judge thereof, which requires it to be taken, as in ordinary cases at law or suits in equity or admiralty, to the next term of the Circuit Court thereafter to be held. On the contrary, the subject is regulated otherwise by § 765 Rev. Stat., which enacts, that "the appeals allowed by the two preceding sections shall be taken on such terms, and under such regulations and orders, as well for the custody and appearance of the person alleged to be in prison or confined or restrained of his liberty, as for sending up to the appellate tribunal a transcript of the petition, writ of habeas corpus, return thereto, and other proceedings, as may be prescribed by the Supreme Court, or, in default thereof, by the court or judge hearing the cause." This statutory pro-

vision evidently contemplates the summary character of proceedings under the writ of *habeas corpus* as not admitting, in favor of the liberty of the citizen, the delays usually and necessarily attending ordinary litigations between parties, and confers upon the judicial tribunal, or the judge hearing the application and making the order which is the subject of the appeal, discretion to send up the case to the appellate tribunal, under such regulations and orders as may seem best adapted to secure the speediest and most effective justice. This harmoniously adapts the practice in direct appeals in such cases, under these sections of the Revised Statutes, to that exercised independently of these provisions, by means of the original writ of *habeas corpus*, with the aid of a writ of *certiorari*, to bring up the record of the proceedings to be reviewed. This form of appellate jurisdiction was declared by this court in *Ex parte Yerger*, 8 Wall. 85, to exist independently of the provisions for a direct appeal, now incorporated into the sections of the Revised Statutes above referred to; and it was exercised without regard to the beginning and ending of the terms of the appellate court, and in a summary manner. The appeal in the present case, from the judgment of the District Court to the Circuit Court, was therefore not heard prematurely, although it was lodged and disposed of at a term of the latter court which was current at the time the appeal was taken.

In regard to the objection now taken that the hearing of the appeal was had before the Circuit Justice at Atlanta at chambers, and not at Savannah in open court, it is sufficient to say that the order to that effect was made without objection taken at the time, or afterwards, in the District or Circuit Court, or at the hearing before Justice Woods; that the appellant appeared at the time and place by counsel and was heard; that the arrangement was made for the convenience of the parties and to avoid delay; and that it does not seem to have involved any hardship or injustice to the party now complaining. The objection, if it could ever have been properly interposed and insisted on, cannot now be made for the first time. It comes too late.

The other assignments of errors relate to the merits, and require a consideration of the limits of the jurisdiction of judicial

tribunals in cases of the extradition of fugitives from justice under the clause of the Constitution by which it is regulated.

That constitutional provision declares that "a person charged in any State with treason, felony, or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." Art. IV., sec. 2, clause 2. There is no express grant to Congress of legislative power to execute this provision, and it is not, in its nature, self executing; but a contemporary construction, contained in the act of 1793, 1 Stat. 302, ever since continued in force, and now embodied in §§ 5278 and 5279 of the Revised Statutes, has established the validity of its legislation on the subject. " This duty of providing by law," said Chief Justice Taney, delivering the opinion of the court in *Kentucky* v. *Denison*, 24 How. 66, 104, " the regulations necessary to carry this compact into execution, from the nature of the duty and the object in view, was manifestly devolved upon Congress; for, if it was left to the States, each State might require different proof to authenticate the judicial proceeding upon which the demand was founded; and as the duty of the Governor of the State, where the fugitive was found, is, in such cases, merely ministerial, without the right to exercise either executive or judicial discretion, he could not lawfully issue a warrant to arrest an individual without a law of the State or of Congress to authorize it."

It follows, however, that, whenever the executive of the State, upon whom such a demand has been made, by virtue of his warrant, causes the arrest for delivery of a person charged as a fugitive from the justice of another State, the prisoner is held in custody only under color of authority derived from the Constitution and laws of the United States, and is entitled to invoke the judgment of the judicial tribunals, whether of the State or the United States, by the writ of *habeas corpus*, upon the lawfulness of his arrest and imprisonment. The jurisdiction of the courts of the States is not excluded in such cases, as was adjudged by this court in the case of *Robb* v. *Connolly*,

111 U. S. 624, for, although the party is restrained of his liberty under color of authority derived from the laws of the United States, he is not in the custody of, or under restraint by, an officer of the United States.

The act of Congress Rev. Stat. § 5278 makes it the duty of the executive authority of the State to which such person has fled to cause the arrest of the alleged fugitive from justice, whenever the executive authority of any State demands such person as a fugitive from justice, and produces a copy of an indictment found, or affidavit made, before a magistrate of any State, charging the person demanded with having committed a crime therein, certified as authentic by the governor or chief magistrate of the State from whence the person so charged has fled.

It must appear, therefore, to the governor of the State to whom such a demand is presented, before he can lawfully comply with it, first, that the person demanded is substantially charged with a crime against the laws of the State from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the State making the demand; and, second, that the person demanded is a fugitive from the justice of the State the executive authority of which makes the demand.

The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of *habeas corpus.* The second is a question of fact, which the governor of the State upon whom the demand is made must decide, upon such evidence as he may deem satisfactory. How far his decision may be reviewed judicially in proceedings in *habeas corpus,* or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court. It is conceded that the determination of the fact by the executive of the State in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof.

*Ex parte Reggel*, 114 U. S. 642. Further than that it is not necessary to go in the present case.

The objections taken in this proceeding to the sufficiency of the indictment, which were overruled both in the District and Circuit Courts, and which are still relied on here, are not well founded. The indictment itself is certified by the governor of New York to be authentic and to be duly authenticated, which is all that is required by the act of Congress. It charges a crime under and against the laws of that State. It is immaterial that it does not appear that a certified copy of such laws was furnished to the governor of Georgia. The statute does not require it, and the governor could have insisted, and it is to be presumed did insist, upon the production of whatever he deemed necessary or important properly to inform him on the subject. And the courts of the United States, to whose process the relator has appealed, take judicial notice of the laws of all the States.

The indictment in question sufficiently charges the substance of a crime against the laws of New York. The objection to it, that it does not appear that the Bethlehem Iron Company, averred to be the owner of the property the subject of the larceny charged, is a person capable in law of such ownership, is not matter of law arising upon the face of the indictment, but can arise only at the trial upon the evidence, if the question should then be made. The averment in the indictment is the allegation of a fact which does not seem to be impossible in law, and is, therefore, traversable. The further objection, that the facts and circumstances, set out in the affidavits, as constituting the crime charged in the indictment, show that it is a crime in Georgia, and the possible subject of prosecution in that State under its laws, does not affect the question. These facts are, in brief, that the original taking of the bonds mentioned in the indictment is shown to have been in Georgia, whence they were brought into New York by the appellant, and there finally appropriated to his own use. If that be true, it is none the less true that the offence charged is also a crime in New York against its laws; and the State of Georgia may choose to waive the exercise of its jurisdiction

by surrendering the fugitive to answer to the laws of New York.

On the question of fact, whether the appellant was a fugitive from the justice of the State of New York, there was direct and positive proof before the governor of Georgia, forming part of the record in this proceeding. There is no other evidence in the record which contradicts it. The appellant in his affidavit does not deny that he was in the State of New York about the date of the day laid in the indictment when the offence is alleged to have been committed, and states, by way of inference only, that he was not in that State on that very day ; and the fact that he has not been within the State since the finding of the indictment is irrelevant and immaterial. To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offence, he has left its jurisdiction and is found within the territory of another.

We find no error in the judgment of the Circuit Court, and the same is

> *Affirmed ; and it is directed that the order and judgment of the District Court, remanding the appellant to the custody of the respondent as the agent of the State of New York, be executed.*