Essex County Court of Common Pleas.

HERMAN POWELL, PETITIONER, v. ALFRED R. MEYER, WARDEN OF THE ESSEX COUNTY JAIL, DEFENDANT.

Decided June 29, 1945.

For the petitioner, *Thomas Potter.*

For Walter D. Van Riper, Attorney-General, *Jerome B. Litvak.*

For the warden, *C. William Caruso.*

HARTSHORNE, C. P. J.   The Governor of New Jersey, after a hearing, issued his extradition warrant for the return of petitioner Powell, as an escaped prisoner, to the State of Georgia, on the due demand of the Governor of that state, all as provided by the Uniform Extradition Act in force in New Jersey and Georgia and generally throughout the states of the Union, *R. S.* 2:185–6 as amended, *N. J. S. A.* 2:185-6, *et seq.* This act implements the brief, mandatory provisions of the United States Constitution that "A person charged in any State with treason, felony or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." *U. S. Const., article IV, section 2.*

Powell has applied to this court under the above act, and obtained a writ of *habeas corpus.* Thereunder he objects to his return to Georgia, claiming that he has been denied "equal protection of the law" and "due process of law" in Georgia, *Const. Ga., article 1, section 1, paragraphs 2, 3,* in that negro citizens were systematically excluded from the grand and petit juries by which he, a negro, was indicted, tried and convicted of murder; that because of popular feeling against him, he did not have a fair trial; and that he now fears mob violence. But as to the latter, his petition admits that the Georgia authorities adequately protected him in 1941, at the time of the death from the automobile accident, the basis of the charge against him. And of course, during the four intervening years any popular feeling would naturally have subsided, let alone the fact that he does not appear to have been endangered during the many months he was in the small Georgia jail, from which he so readily escaped.

Meanwhile, during these years Powell promptly appealed his conviction to the higher courts in Georgia, though without

raising the present constitutional grounds. Practically concurrently with the affirmance of such conviction (*Powell* v. *State*, 193 *Ga.* 398; 18 *S. E. Rep.* (*2d*) 678), he escaped from confinement and came to New Jersey where he lived till his arrest, May 29th, 1944. Since then, the legal steps taken on his behalf have included a hearing before this court on the extradition, as provided by the above act (*R. S.* 2:185–18; *N. J. S. A.* 2:185–18) ; an application to the United States District Court for the District of New Jersey for a writ of *habeas corpus* for his release from custody, at which, for the first time, the grounds now relied on were urged for his release ; the denial of such writ by that court ; an appeal therefrom to the United States Circuit Court of Appeals for the Third Circuit, which affirmed the action of the United States District Court (*Powell* v. *Meyer*, 147 *Fed. Rep.* (*2d*) 606) ; and, upon the abandonment of his appeal therefrom to the United States Supreme Court, the present application to this court for a writ of *habeas corpus*.

The question now is, whether on the above grounds this court should refuse to honor the extradition warrant of the New Jersey Governor, and should release him so that this state cannot comply with the provisions of the above extradition clause of the United States Constitution that he "shall * * * be delivered up" to Georgia. This is despite the fact that the federal courts have themselves stayed their arm, till after Powell has applied to the Georgia courts to right the wrong he claims to have existed in Georgia. *Powell* v. *Meyer, supra; Sanderlin* v. *Smyth*, 4 *Cir.*, 138 *Fed. Rep.* (*2d*) 729.

Here it should be borne in mind that there is much stronger reason for the interposition of the federal courts on *habeas corpus*, which have jurisdiction over Powell's person whether he be in New Jersey or in Georgia, than for that of the courts of New Jersey. This is for the reason that the extradition clause of the United States Constitution does not apply in its mandatory requirements to the federal government, but only to the states. Historically, this is because the federal government was created by the constitution for the primary purpose of overcoming the failure of the states, after the

Revolution, to co-operate fully with each other, either legally or commercially, for the common welfare of our citizens. Thus, the very purpose of the extradition clause was to insure co-operation by one state with another in the enforcement of each other's laws. The essence of the extradition clause, in short, is constitutional comity.

Yet, even without any such constitutional constraint, the rule is well established in the federal courts that, even when basic constitutional grounds exist, the federal courts will not interfere on *habeas corpus* with the functioning of the state courts in such a situation unless "the state courts will not, or cannot, do justice." *Sanderlin* v. *Smyth, supra; Moore* v. *Dempsey,* 261 *U. S.* 86; 43 *S. Ct.* 265. This doctrine is based not on lack of power, but on the propriety of the exercise of admitted power—comity. Surely it is appropriate to give a sovereign state the opoprtunity to review the correctness of its own acts before such acts are condemned by others. And this is just what petitioner has here failed to do.

Surely, this doctrine applies with at least equal force to the courts of a state foreign to that whose courts took the action of which complaint is made. For while the federal courts have jurisdiction in Georgia, the New Jersey courts lack any power whatever to enforce their judgment in such state. Thus, even if Powell were released here, Georgia would still be at full liberty to pursue him, as an escaped convict, throughout all the rest of the states of the Union.

Again, in order to prove but a single one of the grounds on which he relies, it would be necessary to give in evidence in New Jersey, a thousand miles from Georgia, all of the records as to the selection of all of the grand and petit juries in each of the 159 counties in Georgia over the past ten years and more. When this impracticable situation can be overcome by a trial in the forum where the wrong is alleged to exist, the convenience of the petitioner himself, let alone that of the State of New Jersey, lends additional force to the propriety of the application of the federal rule in this state.

Nor is this the crucial point. This is, that while the federal courts are not subject to the extradition clause of the United States Constitution, the state courts are. And if the State

of New Jersey were to refuse to discharge the prisoner here, it would violate the mandatory provisions of the United States Constitution that such person "shall * * * be delivered up * * *"—a clause whose purpose is the very keystone in the structure of the United States themselves. In fact, our courts have repeatedly said that the extradition clause creates an "absolute obligation on each state." And further, that by such clause "in the place of spontaneous submission to the law of comity, there is now substituted that implicit obedience which is due to a rule of law." *In re Voorhees,* 32 *N. J. L.* 141, 145; *In re Thompson,* 85 *N. J. Eq.* 221, 227; 96 *Atl. Rep.* 102. For this reason it has long been settled that, on extradition, the asylum state has no right to consider the merits—the prisoner's guilt or innocence—but only the question of whether the prisoner is within the extradition clause itself, *i. e.,* his identity with the fugitive charged, and the fact that the charge is one of actual crime. *Roberts* v. *Reilly,* 116 *U. S.* 80; 6 *S. Ct.* 291; *In re Thompson, supra; In re Williams,* 5 *N. J. Mis. R.* 528; 137 *Atl. Rep.* 422.

Often the courts, out of sympathy for the prisoner, are wont to scrutinize extradition proceedings rather closely. But in these cases it seems to be overlooked that the prisoner's rights and person can be fully protected, while at the same time the state's constitutional obligations, as above, can be fully performed. Here, specifically, Powell's rights can be fully protected, even on his return to Georgia, by application there to either or both the state and, if necessary, the federal courts in Georgia.

On the other hand, Powell has never yet presented to the Georgia courts the grounds of objection he now urges. How can he, in justice, charge Georgia with injustice, unheard? And even should his application to the state courts of Georgia prove fruitless, he is amply protected by his then clear right to apply to the United States Supreme Court for its protection of his constitutional rights. Nor need he fear injustice at the hands of the people of the State of Georgia, as distinguished from the Georgia authorities. As seen above, that fear is without substance. But even if it had substance, this

court and this state could well arrange terms with Georgia for his security there, concurrent with his removal, even to the extent of a prompt application to the federal courts in Georgia for their protection and consideration of the matter, under the very doctrine above alluded to. Note here the similar steps previously taken by New Jersey with Georgia to insure the safety from mob violence in Georgia of the prisoner there extradited from this state to Georgia, as passed upon with approval by our highest state court. *In re Paramore,* 95 *N. J. Eq.* 386; 123 *Atl. Rep.* 246; *affirmed,* 96 *N. J. Eq.* 397; 125 *Atl. Rep.* 926.

As to *Commonwealth* v. *Superintendent,* 152 *Pa. Super.* 167; 31 *Atl. Rep.* (2*d*) 576, suffice it to say that the terms of the Pennsylvania *Habeas Corpus* Act, 12 *P. S.,* §§ 1892, *et seq.,* as to inquiring "into the facts of the case," do not exist in the New Jersey statute (*R. S.* 2:82–36; *N. J. S. A.* 2:82–36), and this quite regardless of the requirements of the United States Constitution and of the doctrine of comity as between sovereignties.

The writ will be discharged.