232 So.2d 346

Patricia KRENWINKEL

v.

STATE.

1 Div. 72.

Court of Criminal Appeals of Alabama.

Feb. 11, 1970.

M. A. Marsal, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Jasper B. Roberts, Asst. Atty. Gen., for the State.

**CATES, Judge.**

Patricia Krenwinkel petitioned the Mobile Circuit Court for habeas corpus to ascertain the cause of her detention by the Sheriff of that County. Code 1940, T. 15, § 57 confers the right to apply therefor.

After return of the Sheriff and other pleadings thereto the trial judge held that she was deliverable by the Sheriff to the designated agents of California. Whereupon Miss Krenwinkel gave notice of appeal. The record arrived here January 22, 1970 and, by virtue of Code 1940, T. 15, § 369(d), last sentence, the appeal was then automatically under submission.

## I

■ We consider only the record before us. Franks v. State, 11 Ala.App. 70, 65 So. 857. By statute, § 369, supra, assignments of error are done away with; nor are briefs required. Woods v. State, 264 Ala. 315, 87 So.2d 633.

## II

The United States, being a government Federal in nature, constituted by states with a general government and residual powers reserved to the states, dealt in the constitutional convention (as had the Articles of Confederation) with the problem of interstate flight to escape punishment for a crime.

Our Constitution provides (Art. 4, § 2, ¶ 2) as follows:

"A person charged in any State With Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Since this clause is not self-executing, Congress in 1793 undertook to impose upon the governor of each state the duty of such delivery.[1] This statute (1 Stat. 302), now 18 U.S.C. § 3182 (T. 18, U.S.C.A., § 3182), has been accepted by the Supreme Court of the United States as a contemporaneous construction and, hence, legitimately expository. Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544.

It is clear, however, from Kentucky v. Dennison, 24 How. 66, 16 L.Ed. 717, that the statute and the constitutional provision set forth a moral duty, albeit without a sanction capable of judicial enforcement. Interstate flight to avoid prosecution under

---

1. "The right of interstate extradition is founded on, and controlled by, the federal Constitution and effectuating federal statutes. Proceedings for interstate extradition are sui generis, and the right can

be exercised only by a government at the request of a government, and only in criminal cases." 35 C.J.S. Extradition, § 2.

the terms expressed therein has now become a crime punishable under the laws of the United States, 18 U.S.C. § 1073 (T. 18, U.S.C.A. § 1073).

■ Basically the function of courts in extradition is statutory, usually circumscribed so as only to restrain the executive within the scope of the concept of probable cause for detaining (and handing over) one accused of a foreign crime by a foreign sovereign. State v. Parrish, 242 Ala. 7, 5 So.2d 828.

While extradition is not a collection agency to round up stray deadbeats, yet, nevertheless, the Federal Constitution, statutes and the Uniform Act plainly prescribe that crossing a state line affords no sanctuary from being brought to justice. Implicitly (and expressly under the 14th Amendment), where the flag flies the Rule of Law flourishes.

Alabama adopted (with slight changes) the 1926 text of Uniform Criminal Extradition Act. This is now found in Code 1940, T. 15, § 48 et seq. Therein it is provided that a person whom the Governor of Alabama determines has been properly demanded for trial by a sister state may apply for a writ of habeas corpus to examine into the legality leading to his imminent deportation.

■ This examination by a circuit court is not a roving commission. Rather, its function is to make sure of a proper formal charge and that the accused is a fugitive.

Code 1940, T. 15, § 48 defines "executive authority" as including the governor and *any person performing the functions of governor in a state other than this state.*

§ 50 of the same Title provides for demand for extradition in writing and further provides that the specified charging papers from the foreign state "must be authenticated by the executive authority making the demand." § 51 goes on to provide that the governor may investigate the case and call upon the attorney general

or any prosecuting officer to assist. § 52 gives further details as to what the papers must show.

The only arguable question that we can perceive on the present record arises from the fact that the demand requisition is executed by one Ed Reinecke, denominated as "Acting Governor" of the State of California. We quote:

"REQUISITION

"STATE OF CALIFORNIA

"EXECUTIVE DEPARTMENT

"THE ACTING GOVERNOR OF THE STATE OF CALIFORNIA:

"TO HIS EXCELLENCY THE GOVERNOR OF THE STATE OF ALABAMA

"WHEREAS, It appears by the annexed application for requisition and copies of Indictment and supporting papers which I certify are authentic and duly authenticated in accordance with the laws of the State of California, that under the laws of this State PATRICIA KRENWINKEL stands charged with the crime of Murder and Conspiracy, committed in the County of Los Angeles, in this

State, and it has been represented and is satisfactorily shown to me that the accused was present in this State at the time of the commission of said crime and thereafter fled from the justice of this State, and has taken refuge and is now to be found in the State of Alabama;

"NOW, THEREFORE, Pursuant to the provisions of the Constitution and laws of the United States, in such case made and provided, I do hereby respectfully demand that the said Patricia Krenwinkel fugitive from justice, be arrested and secured and delivered to Olivia Conner and William S. Carey who is hereby authorized to receive, convey and transport him to this State, here. to be dealt with according to law.

"IN WITNESS WHEREOF, I have hereunto set my hand and caused the

Great Seal of the State[2] to be affixed, this 12th day of December 1969.

> "Ed Reinecke
> Acting Governor of the
> State of California

"(SEAL)

> "By the Acting Governor:
> "Frank M. Jordan
> Secretary of State
> "By H. P. Sullivan
> Deputy"

■ By repute, we may know that Honorable Ronald Reagan was last elected Governor of California. But on this record we are not at liberty to deduce as a matter of California law he is such chief executive for his entire term, semper et ubique.

In Baugh v. State, 275 Ala. 319, 154 So.2d 674, our Governor had honored a Tennessee requisition which recited that Honorable Buford Ellington was Governor of that State. Our Supreme Court held the requisition defective saying:

> "* * * While the rendition warrant recites that it was issued upon the requisition of Hon. Buford Ellington, Governor of Tennessee, the copy of the requisition introduced by the State in the proceedings shows the following signatures:
>
> "'By the Governor: Bruce Ellington
> Jim Case'
>
> "The above cannot be regarded as the official signature of the Governor of Tennessee who is designated in the rendition warrant as Buford Ellington."

In McGahagin v. State, 41 Ala.App. 236, 131 So.2d 425, the only signature on the California demand was "Edmund G." There Price, J., wrote:

> "* * * We are of the opinion this writing cannot be regarded as the official signature of the Governor of California. It therefore affirmatively appears that the 'requisition' which the governor of this state had before him was not sufficient as a demand for appellant's surrender and that the complaint and supporting papers were not duly authenticated. Meadows v. State, 38 Ala.App. 319, 82 So.2d 811. The judgment must be reversed and the cause remanded."

The Texas Court of Criminal Appeals has considered this question. In Ex parte Fuqua, 162 Tex.Cr.R. 126, 283 S.W.2d 50 we find:

> "The requisition by the State of Oklahoma was offered in evidence. It was dated November 12, 1954, and bore the signature of 'James E. Berry, Governor of Oklahoma.'
>
> "Oral Ridgeway, investigator for the County Attorney of Comanche County, Oklahoma, was called as a witness by appellant and testified in part:
>
> "'Q. Well, who is Governor of Oklahoma? A. Johnson Murray.
>
> "'Q. Was he Governor of Oklahoma on the 12th day of November, this year? A. If he was in the state, he was.
>
> "'Q. Well, he is Governor, whether in the state or not? A. Yes sir.

2. "GREAT SEAL [Lat. clavis regni], the emblem of sovereignty, introduced by Edward the Confessor. It is held by the Lord Chancellor or Lord Keeper for the time being and may not be taken out of the country. * * * The Great Seal was formerly required on charters, grants of office, pensions and annuities, licences of denization, licences for theatres and certain other licences; but the Crown Office Act, 1877, enacted that a simple and easily affixed seal, known as the wafer great seal could be used in all cases instead of the Great Seal; and the Great Seal is now used mainly on the patents of peers and of judges of the High Court. * * *." The Dictionary of English Law, edited by Earl Jowitt.
"* * * In American law, the United States and also each of the states has and uses a seal, always carefully described by law, and sometimes officially called the 'great' seal, though in some instances known simply as 'the seal of the United States,' or 'the seal of the state.'" Black's Law Dictionary.

"'Q. That is all.

"'Q. (By Mr. Hamilton) Who is James E. Berry? A. He is Lieutenant Governor.

"'Q. That is all.'

"The requisition in question appears to be attested by the Secretary of State and bears the 'great seal of the State of Oklahoma.'

"The question raised is whether or not there was a burden resting on the State, at the hearing of appellant's application for release, to show that the Governor was out of the state on the date in question, or otherwise to show that the Lieutenant Governor was authorized to sign the requisition as Governor.

"The requisition being attested and having been acted upon by the Governor of this State, the burden was upon appellant to overcome the prima facie proof of the existence of every fact which the Governor of this State was obliged to determine before issuing the extradition warrant. [Citing cases].

"This would necessarily include the burden to show that the Lieutenant Governor was without authority to sign the requisition as Governor of Oklahoma." Similar contentions to resist extradition were rejected in Ex parte Gesek, 164 Tex. Cr.R. 652, 302 S.W.2d 417 and in Ex parte Fant, Tex.Cr.App., 400 S.W.2d 332.

In 1923 the Supreme Court of Missouri, en banc, wrote in Cockburn v. Willman, 301 Mo. 575, 257 S.W. 458:

"Moreover the contention is not made that the Lieutenant Governor, as such, was not authorized to perform the duties of the Governor in the demand made herein, but that the same is insufficient because it appears upon the face of the application that the demand is made simply by the 'acting Governor.' In other words the implication is clear that the defect complained of is in the omission of the words 'Lieutenant Governor,' preceding those of 'acting Governor.' The

signature of the acting Governor without more was sufficient to sustain the presumption that he was authorized to act as such. This is especially true in view of the attestation of his signature as acting Governor by the Secretary of State. In addition, it is a general rule that if objection be made to the sufficiency of requisition papers, the ground of the objection thereto must be alleged and proved or it will not be considered upon a review of the proceedings by habeas corpus, the presumption being, in the absence of words of negation accompanied by proof, that the person making the demand for the writ was at the time authorized so to do. * * *"

See also State ex rel. Arnold v. Justus, 84 Minn. 237, 87 N.W. 770.

■ Without clear and convincing proof to the contrary, we presume that the Governor of Alabama has bona fide verified that the person acting as executive of a sister state is not an imposter or usurper of office.

There being no proof to imply in any degree that our Governor acted upon a spurious requisition, we consider that the judgment below is due to be

Affirmed.