On July 17, 1974, Harold Leamon Mozingo was sentenced to a term of life imprisonment, to be served in federal prison, for conspiracy to kidnap and to highjack a truck. He was sentenced by the United States Court for the Eastern District of North Carolina.
Prior to this trial on January 23, 1974, the appellant pleaded guilty to a charge of murder in the trial court of the State of South Carolina. Although the reasons are not clear, the appellant was released to the federal authorities in North Carolina to be tried on the conspiracy claim. After being sentenced by the federal court and, while serving time in federal prison, the appellant was transferred back to South Carolina to be sentenced by that State court. On October 30, 1975, the appellant was sentenced to a life imprisonment term for the murder charge, to run concurrent with the sentence to be served in federal prison.
The appellant thereafter was transferred back to the federal authorities. The appellant served fifteen years of his life sentence in several federal institutions. He was last transferred to the Federal Correctional Institute in Talladega, Alabama, when he became eligible for parole.
The United States Parole Commission granted the appellant parole, effective July 2, 1989, subject to the South Carolina detainer, or effective August 2, 1989, to the general community in the event the South Carolina authorities failed to extradite this appellant.
On June 27, 1989, William Mahoney with the South Carolina Department of Corrections contacted by telephone Detective W.E. Hurst of the Talladega Police Department. Mahoney requested Detective Hurst to take the appellant into custody and hold him for extradition. To confirm his request, Mahoney followed up the telephone call by sending an NCIC teletype, which included general information about the appellant and stated South Carolina's desire to have the appellant serve the remaining time required on his murder conviction.
Detective Hurst thereafter received "exemplified" copies of the sentencing document from South Carolina. Hurst then completed and signed an affidavit, seeking a warrant for the appellant's arrest. On June 29, 1989, the affidavit stated that the appellant had "fled from justice from the State of South Carolina" and was believed to be in Talladega, Alabama. Based on this information, Judge Jerry Fielding of the Talladega County Circuit Court issued a warrant for this appellant's arrest, on the grounds that he was a "fugitive from justice."
On June 30, 1989, Detective Andy Yarbrough and Officer Roy Otwell of the Talladega Police Department went to the federal prison to execute the arrest warrant. Robert Jernigan, Jr., released the appellant to their custody. The appellant was then transported to the Talladega County Jail, pending further instructions from the South Carolina authorities.
After his arrest by the Talladega Police Department, the following proceedings were instituted by the appellant:
 July 5, 1989 The appellant filed an affidavit with the Talladega County Circuit Court, requesting the issuance of a writ of habeas corpus.
 The Honorable William C. Sullivan, Circuit Judge, issued the writ and set a hearing for July 6, 1989.
 July 11, 1989 Judge Sullivan assigned the writ to Judge Fielding.
 July 12, 1989 A hearing was held to make an initial determination of facts. *Page 302 
 July 13, 1989 Judge Fielding granted an appearance bond of $25,000, conditional on the appellant remaining in Talladega County, Alabama.
 September 18, 1989 Judge Fielding revoked the appellant's bond and ordered that he be rearrested.
 September 20, 1989 A second writ of habeas corpus was filed, and a hearing was held to determine if the appellant could be extradited to South Carolina. William Mahoney with the South Carolina Department of Corrections testified and presented all necessary documents to effect the appellant's extradition to South Carolina.
 September 21, 1989 Judge Fielding entered an order denying the appellant's writ of habeas corpus.
 September 22, 1989 The appellant filed a motion to stay, pending appeal. The stay was granted until September 28, 1989.
 September 27, 1989 This court granted a 30-day stay pending resolution of this appeal.
During this time, the governor of South Carolina approved the extradition. Our governor, Governor Guy Hunt, reviewed the request and found all matters to be in order. He thus signed the request.
 I
The appellant's sole issue on appeal is that Alabama's extradition statute requires that the person sought by a foreign state be a "fugitive from justice" or have "fled from justice." Ala. Code §§ 15-9-30
through 15-9-42 (1975). The appellant contends that he was in the State of Alabama involuntarily, in the custody of the federal prison system. He thus argues that he is not a "fugitive" as the Extradition Act requires, barring his extradition to South Carolina by the State of Alabama.
Alabama's version of the Uniform Criminal Extradition Act (UCEA) is found at § 15-9-20 et seq., Code of Alabama 1975. Our legislature first adopted the UCEA, with slight variations, in 1926. See Krenwinkel v.State, 45 Ala. App. 474, 232 So.2d 346 (1970). Even though this act has been codified for over sixty years in this State, our courts have never addressed the precise issue which this appellant presents.
The relevant sections which the appellant alleges support his argument are §§ 15-9-30 and 15-9-33, Code of Alabama 1975. Additionally, § 15-9-42, Code of Alabama 1975, refers to one who has "fled from justice."
 Section 15-9-30 states, in relevant part: "[I]t is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with . . . felony or other crime who has fled from justice and is found in this state." (Emphasis added.)
This section is, in large part, a restatement of Article IV, § 2, cl. 2, of the United States Constitution.
Section 15-9-33 states:
 "A warrant of extradition must not be issued unless the documents presented by the executive authority making the demand show that the accused was present in the demanding state at the time of the commission of the alleged crime and that he thereafter fled from that state and is now in this state, and . . . that he has been convicted of a crime in that state and has escaped from confinement or broken his parole." (Emphasis added.)
Lastly, § 15-9-42 grants a district or circuit judge authority to issue a warrant where sufficient proof is shown that the accused committed the crime with which he is charged or for which he had been convicted and that he "has fled from justice."
When the party sought to be extradited challenges the rendition warrant, the State must establish the existence of three factors:
 " '(1) that there was a demand in writing for the return of the person named in the warrant as a fugitive from justice by the executive authority of the state from which he fled, (2) that the requisition was accompanied by a copy of an indictment found, or an information or an affidavit *Page 303 
before a magistrate, substantially charging the person demanded with a crime under the laws of the state from whose justice he fled, and (3) that the copy of the indictment, information or affidavit was authenticated by the executive authority making the demand.' Morrison v. State, 258 Ala. 410, 63 So.2d 346 (1953); State v. Parish, 242 Ala. 7, 5 So.2d 828 (1941)."
Rayburn v. State, 366 So.2d 698, 702 (Ala.Cr.App. 1978), aff'd,366 So.2d 708 (Ala. 1979). The function of the courts in these matters is to insure that a formal charge has been filed and that the person who is the subject of the requested extradition is a "fugitive." Rayburn, 366 So.2d at 707; Potts v. State,378 So.2d 264, 267 (Ala. Cr. App), cert. denied, 378 So.2d 267
(Ala. 1979).
Once the necessary documents have been shown to validate the approval of the rendition warrant by the governor of the asylum state (in this case Alabama), the remaining questions to be addressed by the trial court are two-fold: (1) whether the appellant is a "fugitive from justice"; and (2) whether he is the same person described in the rendition warrant. Kelley v.State, 30 Ala. App. 21, 23, 200 So. 115 (1941). See alsoRayburn, 366 So.2d at 703. In the cause sub judice, the appellant only claims lack of proof of the first requirement — that he is a "fugitive from justice."
Clearly, a literal reading of our statute supports the appellant's argument. When the demanding state has previously convicted the appellant and seeks his extradition from the asylum state, our statute says that the appellant must have "escaped from confinement or broken his parole." Ala. Code §15-9-33 (1975).[1]
The appellant in the present cause did neither of these. Instead, he was brought to Alabama by virtue of being transferred within the federal prison system. In fact, the State of South Carolina relinquished him to the federal authorities after he pleaded guilty to the murder charge in that State.
Regardless of our version of the UCEA, extradition issues are largely controlled by federal law. Appleyard v. Massachusetts,203 U.S. 222, 227, 27 S.Ct. 122, 123-24, 51 L.Ed. 161 (1906);State v. Parrish, 242 Ala. 7, 12, 5 So.2d 828 (1941). As the United States Supreme Court stated in Appleyard,
 "while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state."
203 U.S. at 228, 27 S.Ct. at 124.
Furthermore, the United States Supreme Court has more recently explained the role of our extradition laws as follows:
 "The purpose of the [Extradition] Clause was to preclude any state from becoming a sanctuary from justice of another state and thus 'balkanize' the administration of criminal justice among the several states."
Michigan v. Doran, 439 U.S. 282, 287, 99 S.Ct. 530, 534,58 L.Ed.2d 521 (1978). See also Puerto Rico v. Branstad,483 U.S. 219, 107 S.Ct. 2802, 2807, 97 L.Ed.2d 187 (1987).
 "To this end, the courts have given the Constitution and statute a liberal construction in order to effectuate and expedite the administration of justice in the several states. Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193; Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073; Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549; Roberts v. Reilly, 116 U.S. 80, 94, 6 S.Ct. 291, 29 L.Ed. 544; Ex parte *Page 304 Reggel, 114 U.S. 642, 650, 5 S.Ct. 1148, 29 L.Ed. 250; Commonwealth of Kentucky v. Dennison, 24 How. 66, 104, 16 L.Ed. 717; Ex parte Anthony, 198 Wn. 106, 87 P.2d 302."
Brewer v. Goff, 138 F.2d 710, 711-12 (10th Cir. 1943). See alsoParrish, 242 Ala. at 12, 5 So.2d at 831; Taylor v. Garrison,329 So.2d 506, 511 (Miss. 1976) (extradition laws should not be interpreted narrowly and technically as penal laws); State v.Drake, 720 S.W.2d 798, 800 (Tenn.Cr.App. 1986) (a strict interpretation of the extradition statute would be against the policy of the United States Supreme Court and "would lead to absurd results").
By liberally construing the laws of extradition, the United States Supreme Court has, on numerous occasions, defined who is a "fugitive from justice." The most complete definition first appeared in Appleyard v. Massachusetts, 203 U.S. at 227,27 S.Ct. at 123-24:
 "A person charged by indictment or by affidavit before a magistrate with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime, leaves the state, — no matter for what purpose or with what motive, nor under what belief, — becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the governor of such state to the state whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the governor of the state from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any state."
(Emphasis added.)[2] See also Hogan v. O'Neill, 255 U.S. 52,41 S.Ct. 222, 223, 65 L.Ed. 497 (1921); Biddinger v. Commissionerof Police, 245 U.S. 128, 134, 38 S.Ct. 41, 43, 62 L.Ed. 193
(1917); Bassing v. Cady, 208 U.S. 386, 392-93, 28 S.Ct. 392,394, 52 L.Ed. 540 (1908); Roberts v. Reilly, 116 U.S. 80, 97,6 S.Ct. 291, 29 L.Ed. 544, 549 (1885).
Our courts, too, have defined "fugitive from justice." All that is required is that the appellant was in the demanding State when the crime was committed, that he is now found in Alabama, and that he refuses to return to the demanding state.Parrish, 242 Ala. at 14, 5 So.2d at 834; Kay v. State,34 Ala. App. 8, 37 So.2d 525, 528, cert. denied, 251 Ala. 419,37 So.2d 529 (1948). See also State v. Cox, 306 So.2d 156, 159
(Fla.App. 1974); Justice v. Lockett, 175 Kan. 25, 259 P.2d 152
(1953) (the purpose, motive, or manner of flight is immaterial); United States ex rel. Moulthrope v. Matus,218 F.2d 466, 468 (2nd Cir. 1954).
The issue that our courts have not addressed is whether someone who has been brought into Alabama against his will can be a "fugitive from justice" as used in the extradition statute. Other courts have held that the appellant's departure from the demanding state, even by involuntary means, does not defeat his status as a "fugitive." The same result has been reached where the appellant left with the demanding state's approval and consent. See, e.g., Chamberlain v. Celeste,729 F.2d 1071, 1077 (6th Cir. 1984); United States ex rel. Tyler v.Henderson, 453 F.2d 790, 793 (5th Cir. 1971); Anderson v. Roth,231 Ga. 369, 202 S.E.2d 91, 92 (1973) (appellant in asylum state serving in military capacity); *Page 305 Hanford v. Grimes, 219 Ga. 136, 132 S.E.2d 75 (1963) (a person held in the asylum state under sentence in the federal penitentiary is nonetheless a "fugitive from justice").
This court agrees with the trial court in this case that the appellant became a "fugitive from justice" at the time he became eligible for parole from the federal prison in Talladega, Alabama, and subsequently refused to return to the State of South Carolina on his own accord. The detainer filed by the South Carolina authorities with the federal prison authorities put the appellant on notice that he was expected to return to South Carolina and serve additional time on his life sentence in that state. Thus, we find no constitutional violation in extraditing this appellant back to South Carolina per the rendition warrant as signed and approved by Governor Guy Hunt.[3]
For the reasons stated, the decision of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Black's Law Dictionary, 604 (1979), defines "fugitive from justice" as follows:
 "A person who, having committed a crime, flees from jurisdiction of court where crime is committed or departs from his usual place of abode and conceals himself within the district."
The term "flee from justice" is similarly defined. Black's at 575.
[2] In Abramson, Extradition in America: Of Uniform Acts andGovernmental Discretion, 33 Baylor L.R. 793, 794-95 (1981), the author points out that extradition proceedings are generally begun when the person sought by the demanding state has jumped bail, violated parole, or escaped from confinement. She notes, however, that "[i]t is not necessary that a person actually flee from a state," even though the UCEA uses that terminology. She also states that the UCEA only addresses the situation where the accused has been charged in the demanding state, not convicted.
Alabama's version of the act, on the other hand, addresses both contingencies. The outcome is no different, though, because the courts of this state have made clear that one is deemed "charged" with a crime both before and after he has been convicted. Martin v. State, 50 Ala. App. 1, 276 So.2d 149, 156
(1973); Johnson v. State, 45 Ala. App. 40, 42, 222 So.2d 370
(1969).
[3] The appellant urges this court to adopt the position of the Supreme Court of Maine as enunciated in Lee v. Massie,447 A.2d 65 (Me. 1982). While the facts in Lee are very similar to those in the present cause, that court reached a different result than did we. The Maine court, however, noted that its legislature amended Maine's Criminal Extradition Act and defined "fugitive from justice." This definition included those who skipped bail, violated probation or parole, or escaped confinement.
Alabama's act does not define the term, so thus we are not persuaded by the analysis of Lee. In fact, we note that the Supreme Court of Maine reached a contrary result in a previous opinion, apparently by applying the pre-amended version of that state's statute. See State v. Hale, 157 Me. 361, 172 A.2d 631
(1961).