(No. 42614.—

THE PEOPLE *ex rel.* WILLIAM H. BROWN, JR., Appellant, v. MARTIN JACKSON, Appellee.

*Opinion filed September 30, 1971.*

FREDERICK F. COHN and VICTOR G. SAVIKAS, both of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, (MORTON E. FRIEDMAN and JAMES R. STREICKER, Assistant Attorneys General, of counsel,) for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from an order of the circuit court of Will County quashing a writ of *habeas corpus* and remanding William H. Brown, Jr., the relator, to the custody of the defendant, Martin Jackson, sheriff of Will County, for extradition to the State of Louisiana. The writ was issued upon the relator's petition and after his arrest upon a rendition warrant issued by the Governor of Illinois at the request of the Governor of Louisiana. At the time, he was incarcerated in the Illinois penitentiary at Joliet and was in the process of being paroled. He contends here that the demand and supporting papers were insufficient.

In May 1963, the relator committed an armed robbery in New Orleans, Louisiana, and escaped to Illinois before being apprehended. In 1964, he was tried and convicted of an armed robbery committed in Cook County. While incarcerated in the Cook County jail, a writ of *habeas corpus ad prosequendum* was issued by a Federalcourt in Louisiana requesting that the relator be returned to that State to stand trial for the interstate transportation of

stolen property. After his return and while awaiting Federal trial in Louisiana, the State of Louisiana issued a writ of *habeas corpus ad prosequendum* requesting that he be delivered over for trial on the original charge of armed robbery committed in May of 1963. This writ was honored and he was tried and convicted for the armed robbery. He was then returned to Federal custody, the Federal charges were subsequently dismissed, and he was returned to Illinois to begin serving his sentence pursuant to his Illinois robbery conviction. When he was about to be paroled in connection with his Illinois sentence, the instant extradition proceedings were instituted and this petition for writ of *habeas corpus* was filed wherein the relator challenged the right of the State of Louisiana to extradite him to serve his 30-year sentence there.

The demand of the Governor of Louisiana states that the relator "stands charged***with the crime of armed robbery, committed on or about May 19, 1963, while personally and physically present in the State of Louisiana and***has fled from justice and has taken refuge in the State of Illinois." Supporting papers, certified as true and correct, were presented to the Governor of Illinois and were offered in evidence at the *habeas corpus* hearing. They were: an affidavit by a police officer sworn to before a magistrate, stating that the relator had committed the crime of armed robbery in New Orleans, Louisiana, and a copy of the *alias capias* commanding his arrest. Also, tendered with the above documents was the application for requisition, signed and sworn to by the District Attorney of Orleans Parish, directed to the Governor of Louisiana, requesting the relator's extradition from Illinois. Affidavits of a police officer and of a witness to the robbery and a copy of the order on appeal affirming the relator's conviction for the robbery in question, were attached to the requisition.

The rendition warrant issued by the Governor of Illinois recited that the demand of the Governor of Louisiana was based upon an "Affidavit (complaint) made before a Magistrate & Capias," charging the relator with the crime of armed robbery in Louisiana.

Relying upon *People ex rel. Ritholz v. Sain, 24 Ill.2d 168,* the relator argues that the Governor's rendition warrant, which states that the relator has been charged with the crime of armed robbery, is not supported by the copy of the order affirming his conviction upon appeal. He urges that the order affirming the conviction shows that he had been convicted previously of that charge, and that the allegations of the rendition warrant and the supporting documents are contradictory.

However, in *People ex rel. Banks v. Farner, 39 Ill.2d 176,* in which the identical argument was raised, we stated at pages 178 and 179, as follows: "The fact that the papers also showed conviction, sentence and escape does not contradict the statement that he stands charged with the designated crimes. Even after he has been convicted a person remains 'charged' with the crime, within the meaning of extradition statutes, so long as the judgment of conviction remains unsatisfied. *People ex rel. Holmes v. Babb, 414 Ill. 490; People ex rel. Westbrook v. O'Neill, 378 Ill. 324.*"

The purported contradictions between the recitals of the demand and the supporting papers, which the court found in *Ritholz,* are illusory, and the distinction which the court endeavored to point out in *Farner,* between the facts in *Ritholz* and *Farner,* is without substance. The rationale of *Farner, People ex rel. Jolley v. Koeppel, 42 Ill.2d 257, 259, 260,* and *People ex rel. Westbrook v. O'Neill, 378 Ill. 324, 328,* to the effect that even after conviction a person remain charged with the crime, within the meaning of the Extradition Act, so long as the conviction remains unsatisfied, is sound and worthy of

continued observance. The *Ritholz* decision is an isolated deviation from the strong logic and rationale of *Koeppel, Farner* and *O'Neill,* and is a derelict on the body of the extradition law.

Section 3 of the Uniform Criminal Extradition Act (Ill.Rev.Stat. 1967, ch. 60, par. 20) prescribes the form and content of the demand for extradition. With respect to the documents which must accompany the demand, it designates three alternatives, and compliance with any one is sufficient for extradition. They are: (1) a copy of an indictment or an information supported by affidavit, (2) a copy of an affidavit made before a magistrate, together with a copy of any warrant which was issued thereupon, or (3) a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding State that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. In this case it is clear that the demand was based upon the second alternative of section 3 of the Act, and that its requirements were fully met.

In *People ex rel. Hackler v. Lohman, 17 Ill.2d 78,* wherein we reviewed the law pertaining to extradition, at pages 88 and 89, we stated: "The real issue in a *habeas corpus* proceeding is whether the prisoner is illegally restrained. In an extradition proceeding, the initial inquiry is whether the rendition warrant is *prima facie* sufficient to justify the detention. *(People ex rel. Poncher v. Toman, 371 Ill. 275.)* By the weight of authority, however, legal deficiencies in the rendition warrant may be cured, in *habeas corpus* proceedings for the discharge of the fugitive, by including with the return of the sheriff or producing at the hearing the papers on which the warrant was issued which show on their face that they are in due legal form and that the warrant was justified. 22 Am. Jur., par. 51, page 289; 89 A.L.R. 599." After reviewing the record, we

find that there was no inconsistency or contradiction between the rendition warrant and the supporting requisition documents.

In further challenging the sufficiency of the extradition papers the relator contends that the State of Louisiana committed a fraud upon him and upon the State of Illinois, and as a direct result of such fraud, seized the body of the defendant without compliance with the laws and the constitution of Illinois and of the United States. The relator apparently refers to the series of writs issued by means of which he was returned for trial in the State court of Louisiana. Without consideration of the fact that the record contains no evidence which supports this contention, the law is well settled that the legality of the delivery of a fugitive to the demanding State is not open to inquiry in a *habeas corpus* proceeding. This question was previously raised before this court in *People ex rel. Hesley v. Ragen, 396 Ill. 554,* a case involving similar facts, wherein at 560, we stated: "The trial court will not inquire into the legality or illegality of the delivery of a fugitive from justice to the demanding State. The question whether the prisoner was lawfully or unlawfully surrendered to the demanding State affects neither the guilt or innocence of the accused, nor the jurisdiction of the trial court to try him. [Citations.] " Accord: *Pettibone v. Nichols, 203 U.S. 192, 203-213, 51 L.Ed. 148; People ex rel. McGee v. Hill, 350 Ill. 129, 133.*

Since the issue of the legality or illegality of delivery of a fugitive affects neither the guilt nor innocence of the relator, nor the jurisdiction of the court to try him, the question cannot be raised in an extradition proceeding. The scope of inquiry must be limited to a determination whether the relator is substantially charged with a crime and is actually a fugitive from the demanding State.

In *People ex rel. Hackler v. Lohman, 17 Ill.2d 78,* at pages 84 and 85, we stated: "We have said that this act

establishes 'a complete, expeditious and summary procedure for returning a fugitive from the asylum to the demanding State, for the guidance of and binding upon all of the courts of the land,' [citation] rather than a judicial proceeding to inquire into the merits of the charges; and that the statute should be accorded a liberal construction to accomplish the return of the fugitive summarily. [Citation.]

"Since the only purpose of extradition is the return of the fugitive to the place of the alleged offense, his constitutional rights, other than the present right to personal liberty, are not involved. Courts generally recognize the right of the accused to a writ of *habeas corpus* to determine if he is substantially charged with a crime and is actually a fugitive from the demanding State. [Citation.] But the scope of the inquiry is limited to those considerations. [Citations.]

"While it is generally recognized that States may enact legislation ancillary to and in aid of this provision of the United States constitution and its supplementary Federal legislation, it is also well settled that such enactments must not be inconsistent with the constitutional purpose or restrict the summary exercise of the authority of the executive. [Citations.] *** 'Every State's right to punish its offenders must be assured and such offenders should not be accorded protective asylum by another State. Federal, rather than State control, is essential to avoid a diversity of requirements and procedures.' *People ex rel. Millet v. Babb, 1 Ill.2d 191, 196."*

The relator was not entitled to be discharged, and the circuit court of Will County properly quashed the writ and remanded the relator to the custody of the sheriff, with directions to deliver him to the authorized agent of Louisiana. Therefore, the order is affirmed.

*Order affirmed.*