**Bruce LEE**

**v.**

**George J. MASSIE, Sheriff [1].**

Supreme Judicial Court of Maine.

Argued March 2, 1982.

Decided July 2, 1982.

---

1.  We have changed the caption to replace the Sheriff of Knox County for the State of Maine as the named party-defendant. *See Bouchard v. Richardson*, Me., 427 A.2d 490, 490 n.1 (1981). While Carleton V. Thurston was the county's Sheriff at the time of the events giving rise to this action, this caption properly reflects the identity of the current official. *Id.*; M.R. Civ.P. 25(d)(1).

Steven C. Fletcher (orally), Rockland, for plaintiff.

James E. Tierney, Atty. Gen., Anita St. Onge (orally), William Stokes, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

CARTER, Justice.

The petitioner, Bruce Lee, appeals from a judgment of the Superior Court, Knox County, denying his petition for writ of habeas corpus which contested extradition. Because we conclude that the petitioner is not a "fugitive from justice" within the meaning of Maine's criminal extradition statutes as they existed when this proceeding was commenced, 15 M.R.S.A. §§ 201–229 (1980), we sustain the appeal and reverse the judgment.

On February 28, 1972, the Larimer County, Colorado, District Attorney filed an information charging the petitioner with kidnapping and assault. The petitioner entered a plea of not guilty in the Larimer County District Court. He evidently failed to make a further appearance, and a bench warrant was issued on July 11, 1972, for his arrest. The Colorado authorities subsequently learned that the petitioner was in the Maine State Prison, serving a sentence for assault and aggravated assault.[2] Pursuant to the Interstate Compact on Detainers, 34 M.R.S.A. §§ 1411–1426, the petitioner was transferred from the Prison to Larimer County where he was tried and, on July 19, 1979, convicted of kidnapping. He was sentenced to a prison term of three to four years, to be "served consecutively with the sentence that the Defendant is now serving in the State of Maine." The petitioner was then returned to Maine to complete his sentence for the assault convictions.

On January 6, 1981, the date on which the defendant allegedly completed service of his Maine sentence, the Knox County Sheriff's Department took the petitioner from the custody of the Maine State Prison into its own custody as the result of a criminal complaint charging him with being a fugitive from justice. Governor Lamm of Colorado subsequently issued a demand for the extradition of the petitioner, alleging "that the accused was present in this state at the time of the commission of said crime [kidnapping] and thereafter has not completed his sentence and fled from the justice of this state and has taken refuge and is now to be found in the State of Maine." Governor Brennan honored this demand and on January 26, 1981, directed Carleton V. Thurston, then the Sheriff of Knox County, to arrest the petitioner. The petitioner was thereafter held in the custody of the Maine authorities on the warrant of the Maine Governor.[3]

Pursuant to 15 M.R.S.A. § 210 (1980), the petitioner contested extradition by filing, on February 3, 1981, a petition for writ of habeas corpus.[4] Following a hearing, the

---

2. *See State v. Lee*, Me., 404 A.2d 983 (1979).

3. No question is raised by the petitioner as to the validity of the arrest of the petitioner on January 6, 1981, or his subsequent detention until January 26, 1981, when the petitioner was arrested on the warrant of the Maine Governor.

4. As of September 18, 1981, such a proceeding would be designated a "petition contesting extradition." P.L. 1981, ch. 317, § 3, amending 15 M.R.S.A. § 210–A. The Legislature had acted two years earlier, however, in the context of another section in this Act, to change this form of proceeding from one for a writ of habeas corpus to one contesting extradition. P.L. 1979, ch. 701, §§ 3–4, amending 15 M.R.S.A.

Superior Court denied the petition. The Law Court issued a certificate of probable cause after the petitioner filed a notice of appeal, *see* 15 M.R.S.A. § 210–A (1980), and this matter is now properly before us.

■ At the time the petition for habeas corpus was filed and these proceedings thereby commenced, a "fugitive from justice" was statutorily defined to include "[a]ny person convicted of a crime in the demanding state who is not in that state, unless he is lawfully absent pursuant to the terms of his bail or other release, and who has escaped from confinement or has broken the terms of his bail, probation or parole." 15 M.R.S.A. § 201(4)(B) (1980).[5]

Section 201(4)(B) (1980) thus created several conditions, the satisfaction of which rendered a person a "fugitive from justice" within the meaning of that provision. At issue here is the last of these criteria: "and who has escaped from confinement or has broken the terms of his bail, probation or parole." This criterion is conjunctive within the provisions of section 201(4)(B) viewed as a whole. If the petitioner does not fall within its purview as either an escapee or one who had broken the terms of his bail, probation or parole, he is not a fugitive within the meaning of that definition.

At the time the rendition warrant issued, the petitioner was present in Maine completing his sentences for the local assault convictions. There has been neither a representation by the Governor of Colorado nor a demonstration by the State here that the petitioner's presence in Maine is attributable to a breach of the terms of his bail, probation or parole. Further, it cannot be said that the petitioner has "escaped" from confinement in Colorado, as the word "escape" in section 201(4)(B) is commonly and ordinarily used to denote a deliberate flight. *See State v. Maine State Employees Association*, Me., 443 A.2d 948, 951 (1982) (courts must attribute to statutory language its plain and ordinary meaning).[6] To construe the term "escape" so as to encompass the situation, such as that presented here, of a prisoner who has been surrendered by the authorities of the demanding state to those of the asylum state, would be to impose on the term a construction at odds with its plain meaning. This we will not do. *See Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.*, Me., 411 A.2d 1017, 1020 (1980).

Courts of other jurisdictions have employed several approaches to support their conclusion that one in the position of the instant petitioner is in fact a fugitive from justice and is thus subject to extradition. Each of the cases arriving at this conclusion, however, is premised on a statutory configuration more closely aligned than is Maine's to the Uniform Criminal Extradition Act which provides no discrete, free-standing definition of a fugitive from justice.[7] Title 15 M.R.S.A. § 201(4) (1980), sets forth an explicit definition of such a person, distinct from the other provisions of the extradition statute. As we conclude *infra*, section 201(4)(B) differs in substance from the provisions of the Uniform Act.

§ 210. We do not find this interim titular disparity to have affected the propriety of the action at bar.

5. In P.L. 1981, ch. 317, § 1, the Legislature changed the definition of a "fugitive from justice" to include one who has been convicted of a crime in the demanding state, but whose sentence imposed pursuant to that conviction has not been fully served. This includes "a person who has been serving a sentence in this State." The Act effecting this modification and amendment, however, became effective on September 18, 1981, more than eight months after the proceeding at bar was initiated. The terms of this subsequent legislation thus do not operate directly to govern the disposition of this matter. 1 M.R.S.A. § 302; *see Comber v. Inhabitants of Dennistown*, Me., 398 A.2d 376, 379 n.3 (1979).

6. "Escape" is defined as signifying: "To get away, as by flight or other conscious effort; to break away, get free or get clear." *Webster's New International Dictionary* 871 (2nd ed. 1960).

7. Section 2 of the Uniform Act, in setting forth the duties of the Governor of the asylum state, permits the extradition of "any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

*Cf. Sawyer v. State*, Me., 382 A.2d 1039, 1042–43 (1978) (mere differences in punctuation between 15 M.R.S.A. § 203 and section 3 of the Uniform Act does not evidence legislative intent to modify the substantive provisions of the latter).

In the absence of the specific definition which the Maine Legislature enacted in section 201(4)(B) independently of the provisions of the Uniform Act, some courts have held that a person remains "charged" with a crime within the meaning of section 2 of the Uniform Act, even though he or she has been convicted, until the sentence imposed pursuant to that conviction is satisfied. That person is thereby subject to extradition under that provision. *See, e.g., Gottfried v. Cronin*, 192 Colo. 25, 28, 555 P.2d 969, 971 (1976); *Frazier v. Grimes*, 221 Ga. 375, 377, 145 S.E.2d 39, 40 (1965); *People ex rel. Brown v. Jackson*, 49 Ill.2d 209, 213, 274 N.E.2d 17, 19 (1971); *State ex rel. Graves v. Williams*, 99 Wis.2d 65, 69, 298 N.W.2d 392, 394 (1980), *cert. denied*, 450 U.S. 930, 101 S.Ct. 1389, 67 L.Ed.2d 362 (1981). Title 15 M.R.S.A. § 201(4) is not, however, amenable to this mode of analysis. Section 201(4) is bifurcated; subsection (A) applied to those "accused of a crime" and subsection (B) to those "convicted of a crime." If section 201(4)(A) were also applied to those who were expressly subject to section 201(4)(B), the latter provision would be rendered meaningless and nugatory. The Legislature's formulation of section 201(4)(B) therefore demonstrates its intent that those *convicted* of a crime do not become subject to extradition merely because they had been *charged* with that crime.

Courts of other jurisdictions have also reasoned that those in the position of the petitioner at bar are absent from the boundaries of the demanding state, regardless of the reasons for that absence, and are wanted there to complete their sentences. Those persons thus satisfy the more general characteristics of those who have "fled from justice" within the meaning of the Uniform Act and are held to be subject to extradition. *See, e.g., Gottfried*, 192 Colo. at 28, 555 P.2d at 971; *State ex rel. Jackson v. Froelich*, 77 Wis.2d 299, 312, 253 N.W.2d 69, 75 (1977). Clearly, in the face of the finely crafted definition of a "fugitive from justice" provided by the Maine Legislature in section 201(4), principal resort to such broader principles in derogation of the very specific definitional language of this Act is unwarranted.

Finally, section 3 of the Uniform Act, like 15 M.R.S.A. § 203(2)(A) (1980), requires the demand for extradition to include an allegation that the person demanded "has escaped from confinement or has broken the terms of his bail, probation or parole." In applying this language to those situated similarly to this petitioner, courts have recognized that the express terms of this provision do not encompass such a person, but that he or she is nonetheless subject to extradition as those terms are illustrative and not exhaustive. *See, e.g., Gottfried*, 192 Colo. at 29, 555 P.2d at 972; *Graves*, 99 Wis.2d at 71, 298 N.W.2d at 395. In light of the maxim, *expressio unius est exclusio alterius*, which is regarded as "well recognized in Maine," *Wescott v. Allstate Insurance*, Me., 397 A.2d 156, 169 (1979), we find no indication that the Legislature intended the descriptive characteristics of a "fugitive from justice," set out in section 201(4), to be other than exclusive. Indeed, the amended section 201(4)(B), which became effective on September 18, 1981, expressly provides that the definition of a fugitive from justice there set forth "shall include, but not be limited to" the characteristics there enumerated. 15 M.R.S.A. § 201(4)(B) (1981). Because the Maine Legislature omitted such language indicating the illustrative nature of its earlier definitional formulation of a "fugitive from justice," we conclude that the Maine Legislature intended section 201(4)(B) to constitute a comprehensive and exclusive definition of a "fugitive from justice." *Cf. Blouin v. City of Rockland*, Me., 441 A.2d 1008, 1011 (1982) (omission of one term in an ordinance deemed intentional where it is present elsewhere in the same body).

The effect of the 1981 amendment to section 201(4)(B) on the legislative intent underlying its predecessor must also be

gauged. As the statute now reads, a "fugitive from justice" includes one "who has not served or completed a sentence imposed pursuant to the conviction" adjudicated in the demanding state. This fugitive, in turn, may be "a person who has been serving a sentence in this State; a person who has escaped from confinement in the demanding state; or a person who has broken the terms of his bail, probation or parole." As a general principle of statutory construction, enactments made by a subsequent Legislature may be examined to illuminate the meaning of prior legislative terminology that is ambiguous. *Singal v. City of Bangor*, Me., 440 A.2d 1048, 1053 (1982); *Mundy v. Simmons*, Me., 424 A.2d 135, 137 (1980); *Delano v. City of South Portland*, Me., 405 A.2d 222, 226 (1979). Here, however, the meaning of section 201(4)(B), in its form prior to the 1981 amendment, is not ambiguous. The provision very clearly identifies as "fugitive from justice" one who had escaped from confinement or had violated the terms of his or her bail, probation or parole. Attribution to those terms of their plain and ordinary meanings dispels any ambiguity and precludes their reasonable susceptibility to several incompatible constructions.

Even if such an ambiguity existed, the 1981 legislation has not affected the phraseology at issue here. *Cf. Singal*, 440 A.2d at 1053; and *Mundy*, 424 A.2d at 137 (where, in each case, the Court scrutinized the prior enactments in light of their subsequent modification). Rather, the Legislature has expanded the scope of its notion of a "fugitive from justice" by *additionally* including, among others, those whose sentences in the demanding state remain unsatisfied. Those who were fugitives under the prior version of section 201(4)(B) remain so by virtue of the language which was left unaltered in the 1981 modification. The 1981 legislative activity, then, cannot be viewed as intended to clarify the meaning of that earlier statu-

tory provision. Accordingly, we conclude that the petitioner is not a fugitive from justice under 15 M.R.S.A. § 201(4)(B) (1980).[8]

The State further urges, however, that this proceeding is moot notwithstanding our conclusion that the petitioner is not a fugitive under the controlling statute. The State argues that the petitioner is clearly a fugitive within the meaning of section 201(4)(B) as it presently stands, and that if released now pursuant to this successful appeal, he will become the subject of a new extradition proceeding governed by the current statute.

Even assuming, without deciding, that the petitioner can be characterized as a fugitive under section 201(4)(B) (1981), we decline to dispose of this proceeding as moot. Such a resolution would give controlling effect to the decision below which was based on an improper construction of the statute there at issue. This, in itself, is a proper basis to reject the mootness claim. *Cf. Singal*, 440 A.2d at 1053. Further, the supposition that the State will elect again to seek the extradition of the petitioner is, on the basis of the record before us, a groundless one. Even if the State had represented such an intent, however, any conclusion by this Court, made solely on the basis of the current statute, that the petitioner is subject to extradition could be based only on pure speculation as to the satisfaction of the other procedural requirements imposed by 15 M.R.S.A. §§ 201–229. We would thereby foreclose the petitioner from insisting upon full observance of his substantive and procedural rights in the new proceeding and from challenging any alleged defects in it. Principles of judicial integrity and, indeed, of the constitutionally drawn allocation of governmental power mandate that *this* proceeding be disposed on *its own* merits.

---

**8.** Neither party has raised at any point in this action a challenge to the constitutionality of 15 M.R.S.A. § 201(4)(B), as we construe it here in accordance with its plain meaning. Because the issue of the statute's constitutionality, as so construed, is, therefore, not properly before us, we do not reach out to determine its resolution. *See Culbert v. Sampson's Supermarkets, Inc.*, Me., 444 A.2d 433, 433 n.1 (1982).

Accordingly, the entry is:

Judgment reversed.

All concurring.