NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 50

No. 2017-110

| | |
|---|---|
| James D. Perron | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| Lisa Menard, Commissioner | May Term, 2017 |

Helen M. Toor, J.

Matthew F. Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Plaintiff-Appellant.

David Tartter, Deputy State's Attorney, Montpelier, for Defendant-Appellee.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **CARROLL, J.** The State of New York seeks to extradite petitioner James Perron, alleging that he has a sentence to serve in that state following his conviction for grand larceny. Petitioner was initially detained on a prerequisition warrant, but Vermont's Governor has since issued two separate warrants for petitioner's arrest. The first authorized petitioner's arrest as a fugitive charged by New York with grand larceny who fled justice in that state and is currently in Vermont. The second states that petitioner escaped confinement and failed to report for service of the sentence imposed by New York. The trial court denied petitioner's prerequisition writ of habeas corpus and subsequently also denied his challenge to the Governor's warrants. Petitioner now appeals the trial court's ruling. We affirm.

¶ 2. In 2014, petitioner was indicted in Westchester County, New York, for several theft and fraud-related crimes. While he was released on bail pending trial on those charges, petitioner was taken into custody by federal agents and indicted on an unrelated wire fraud charge in Florida. New York state took custody of petitioner while his federal case was pending and petitioner entered a plea to one count of third-degree grand larceny. Petitioner was sentenced to two-to-four-years imprisonment on the state charge. Petitioner was then returned to federal custody and subsequently convicted. The U.S. District Court for the Southern District of Florida sentenced petitioner to thirty months' imprisonment on the federal charge. The sentencing documents were silent as to whether the sentence would be served concurrently with or consecutive to the New York sentence.

¶ 3. Petitioner completed his federal sentence in the federal correctional institute in Berlin, New Hampshire. Upon completion of his federal sentence, petitioner was taken into custody by the State of New Hampshire on a New York warrant. In an extradition proceeding, the New Hampshire court found that the New York paperwork did not comply with New Hampshire's extradition requirements, though that court's decision does not explain how the paperwork was deficient. The State of New Hampshire released petitioner on January 25, 2017. Shortly thereafter, Vermont state police received notice that petitioner had an extraditable New York arrest warrant outstanding and that he was currently in Vermont. Petitioner was arrested on a prerequisition warrant and held in a Vermont correctional facility.

¶ 4. Petitioner filed a writ of habeas corpus, which the trial court denied. Since his initial arrest in the state, Vermont's Governor has issued two extradition warrants for petitioner; petitioner unsuccessfully challenged both of these in the trial court. Petitioner now appeals the trial court's determination that the Governor's warrants meet prima facie requirements for extradition, arguing that the documents produced by New York fail to show that he has a remaining

sentence to serve in that state and that he is not a "fugitive" as that term is used in an extradition context.*

¶ 5.      We begin by noting, as we have before, the constraints that bind our authority when we are asked to review another state's extradition request.  In re Ladd, 157 Vt. 270, 272, 596 A.2d 1313, 1314 (1991).  The U.S. Constitution places limits on the sovereign authority of the states where necessary to " 'the Framers' conception of national identity and Union.' "  In re LaPlante, 2014 VT 79, ¶ 5, 197 Vt. 189, 101 A.3d 173 (quoting California v. Sup. Ct. of Cal., San Bernardino Cty., 482 U.S. 400, 405 (1987)).  Article IV's Extradition Clause is one such limit:

> A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he [or she] fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const., art. IV, § 2, cl. 2.  The Extradition Clause "articulate[s], in mandatory language, the concepts of comity and full faith and credit," and its purpose is to bring criminal offenders to justice in the states where they have offended as quickly as possible.  Michigan v. Doran, 439 U.S. 282, 287-88 (1978).  To further the administration of justice in the many states, an individual state must tender an offender or alleged offender to the state from whence he or she has fled upon the request of that state's executive authority.  See id.

¶ 6.      But despite its mandatory language and purpose, the Extradition Clause is not self-executing.  To that end, Congress adopted the Extradition Act of 1793, which, as codified, requires that a state, upon the request of a sister-state, secure a "fugitive from justice" when an indictment or affidavit charging the fugitive with a crime committed in the demanding state accompanies the

_____

* We note that petitioner challenges whether he has a remaining New York sentence to serve only as to the second Governor's warrant.  Petitioner argues that he is not a "fugitive" for purposes of both warrants.

3

request. 18 U.S.C. § 3182; see also Sup. Ct. of Cal., San Bernardino Cty., 482 U.S. at 406-07 (explaining that early dispute between Pennsylvania and Virginia led President Washington to seek, and obtain, law regulating extradition). It is now, though it was not always, settled law that the Extradition Act permits federal courts to require that state officials comply with the Act's, and thereby the Extradition Clause's, demands. See Puerto Rico v. Branstad, 483 U.S. 219, 224-29 (1987) (abandoning rule first adopted in Kentucky v. Dennison, 65 U.S. 66, 24 How. 66 (1860), when federal power was "at its lowest ebb" on eve of Civil War, that asylum state's obligation to deliver fugitive to demanding state was "moral" rather than "mandatory and compulsory" (quoting Dennison, 65 U.S. at 107, 24 How. at 107)). We are, therefore, bound not only by the Constitution's own language, but also by a federal law in existence since the nation's earliest days.

¶ 7. We are, of course, also bound by our own state laws—here, the Uniform Criminal Extradition Act (UCEA), adopted by Vermont in 1933. 1933, No. 36 (Adj. Sess.) (codified as amended at 13 V.S.A. §§ 4941-4969). The UCEA's purpose was to implement the requirements of the Extradition Clause. Lovejoy v. State, 148 Vt. 239, 243, 531 A.2d 921, 924 (1987). Section 4943(b) of Title 13 provides that Vermont's executive authority shall not issue an extradition warrant unless the demanding state presents documents showing: (1) that the accused was in the demanding state at the time of the criminal offense and subsequently fled; (2) the accused is currently in Vermont; and (3) the accused is "charged . . . with having committed a crime under the laws of that state or that he or she has been convicted of a crime in that state and has escaped from confinement or broken the terms of his or her bail, probation or parole." The demanding state's burden to produce documents showing the three points listed in § 4943(b)(3) is "minimal," though "not nonexistent." In re Ladd, 157 Vt. at 272-73, 596 A.2d at 1314.

¶ 8. The U.S. Supreme Court has emphasized that extradition is "a summary and mandatory executive proceeding" and the Clause does not permit an asylum state to inquire into the merits of the charge against an offender. Doran, 439 U.S. at 288-90. Once a governor has

4

issued a warrant for extradition, the asylum state's courts may only consider four questions: (1) whether the documents accompanying the writ are facially in order; (2) whether the person held has, in fact, been charged with a crime in the demanding state; (3) whether the person held is the person named in the writ; and (4) whether the person held is a fugitive. Id. at 289. Furthermore, an executive writ of extradition is prima facie evidence that both constitutional and statutory requirements are met. Id.

¶ 9. Thus, our only task when asked to review an extradition request is to "ensure the validity of the requisition warrant and procedural compliance with our extradition statute, and we will not look behind these documents . . . ." In re Ladd, 157 Vt. at 272, 596 A.2d at 1314 (citation omitted). And it follows that, because our review of an extradition request is limited to the writ's documentation and whether that documentation meets statutory requirements, our review of a Governor's Writ of Extradition is de novo. In re LaPlante, 2014 VT 79, ¶ 6 n.3.

¶ 10. Having outlined the limits of our authority when reviewing a request for extradition, we turn now to petitioner's arguments. Petitioner argues first that the documents submitted by the State of New York in support of that state's request for petitioner's extradition do not show that he has a remaining sentence to serve because it is not clear whether the New York and federal sentences were to be served concurrently or consecutively. We disagree.

¶ 11. Section 4943(a) of Title 13 requires that an extradition request be accompanied by an indictment found, an information supported by affidavit, or an affidavit "made before a magistrate," and either a warrant or a judgment of conviction or of sentence imposed "together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his or her bail, probation or parole." In this case, the Governor of New York's extradition request is supported by an affidavit from a New York assistant district attorney, which alleges that petitioner was convicted of grand larceny, sentenced to an indeterminate term of two-to-four years' imprisonment, and has served that

5

sentence. That affidavit is, in turn, supported by transcripts of petitioner's state sentencing hearing and the federal judgment.

¶ 12. In the absence of a definite statement in the sentencing document, 18 U.S.C. § 3584 controls whether sentences are concurrent or consecutive. Subsection (a) of the statute provides that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). Terms imposed at the same time are presumed, in the absence of either contrary statement or statutory prohibition, to run concurrently. Id. But "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Id.

¶ 13. Here, petitioner was sentenced in New York and then promptly delivered to federal authorities for sentencing on a federal charge in a Florida district court. He did not begin serving his state sentence before his federal sentence was delivered. The New York sentencing judge explicitly and repeatedly stressed during the sentencing hearing that only the federal court had the authority to determine whether its sentence would run concurrently with or consecutively to the New York sentence. The federal judgment states simply that petitioner is sentenced to thirty-months' imprisonment; it makes no mention of whether petitioner's federal sentence is concurrent or consecutive to his already imposed, but not yet discharged, state sentence. Absent any evidence to the contrary, petitioner's state and federal sentences are consecutive. See 18 U.S.C. § 3584(a).

¶ 14. Having found that the documents submitted by the State of New York show that petitioner has a remaining sentence to serve in New York, we turn to petitioner's second argument—that he cannot be considered a "fugitive from justice" under either Governor's warrant because he did not leave the State of New York voluntarily, but instead New York committed him to federal custody after his state conviction for grand larceny so that he could be sentenced in a

6

Florida federal district court under federal law for wire fraud. We find this argument as unpersuasive as petitioner's first.

¶ 15. We note at the outset that, though petitioner falls under 13 V.S.A. § 4943(b)(3)'s second clause because New York has convicted petitioner of a crime, he also falls under the statute's first clause. The statute prohibits extradition unless the demanding state can show: (1) that the person sought "is lawfully charged . . . with having committed a crime under the laws of that state," or (2) "that he or she has been convicted of a crime in that state and has escaped from confinement or broken the terms of his or her bail, probation or parole." 13 V.S.A. § 4943(b)(3) (emphasis added). A person, such as petitioner, who is convicted of a crime but has not completed the sentence imposed for commission of that crime, remains "charged" with that crime. In re Hval, 148 Vt. 544, 546, 537 A.2d 135, 137 (1987) (" 'It is uniformly recognized that a crime that has resulted in conviction remains a charge under the constitution so long as the sentence resulting from conviction is unsatisfied.' " (quoting Wynsma v. Leach, 536 P.2d 817, 819 (Colo. 1975)). Here, petitioner was sentenced to two-to-four years' imprisonment after conviction for grand larceny in a New York court. The documents attached to New York's extradition request show that petitioner has not completed this sentence. Thus, he remains "charged" with the original New York crime as that term is defined in an extradition proceeding.

¶ 16. Neither the Extradition Clause, the federal Extradition Act, nor our statute predicates a party's fugitive status on intentional flight from the charging jurisdiction. Interpreting the constitutional provision, the U.S. Supreme Court has said that "the simple inquiry must be whether the person whose surrender is demanded is in fact a fugitive from justice, not whether he [or she] consciously fled from justice." Appleyard v. Massachusetts, 203 U.S. 222, 227 (1906).

> A person charged by indictment or by affidavit . . . with the commission within a state of a crime covered by its laws, and who, after the date of the commission of such crime, leaves the state,— no matter for what purpose or with what motive, nor under what belief,—becomes, from the time of such leaving, and within the

7

> meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another state must be delivered up by the governor of such state to the state whose laws are alleged to have been violated . . . . Such is the command of the supreme law of the land, which may not be disregarded by any state.

Id. In the Court's own words, this definition of "fugitive" applies equally to both the Extradition Clause and the federal Extradition Act's requirement that the person sought from an asylum state be "a fugitive from justice." See U.S. Const., art. IV, § 2, cl. 2; 18 U.S.C. § 3182. The reason for this definition is clear—the Clause and its implementing Act secure the administration of the criminal laws of the states, "an object of the first concern to the people of the entire country." Appleyard, 203 U.S. at 227. A narrower definition, predicating fugitive status on intent to leave the charging jurisdiction, if adopted by fewer than all of the states, would threaten the administration of criminal laws across the nation.

¶ 17. Other states have followed Appleyard's lead to conclude that, on language substantially similar to Vermont's own statutory language and also derived from the UCEA, the fugitive status of a person charged with a crime is determined simply by whether they are outside the charging jurisdiction. See, e.g., In re Fedder, 299 P.2d 881, 887 (Cal. Dist. Ct. App. 1956) ("It is enough, if after committing a crime in one jurisdiction, the perpetrator departs and is later found in another. . . . [E]ven if the prisoner was forcibly removed from the state by federal authorities he is still a fugitive from justice."); Clark v. Comm'r of Corr., 917 A.2d 1, 24 (Conn. 2007) ("[A] person who, like the petitioner, leaves the demanding state involuntarily under government compulsion is a fugitive from justice subject to the mandatory provisions of the act."); People ex rel. Shank v. Gerace, 661 N.Y.S.2d 403, 407 (N.Y. App. Div. 1997) ("[I]t is immaterial what the [petitioner] believed when he left or whether he had the purpose of avoiding prosecution."); Commonwealth ex rel. Bonomo v. Haas, 236 A.2d 810, 813 (Pa. 1968) ("[T]he motives or purposes of the party in leaving the state where the crime was committed are entirely immaterial." (quotation omitted)). We agree with these states and follow Appleyard to conclude that, under

8

Vermont's law, fugitive status does not turn on the reason for a party's departure from the convicting jurisdiction; a party's presence in another state is enough.

¶ 18.     Petitioner asks us instead to follow a single case wherein the Maine high court held that fugitive status required deliberate flight. See Lee v. Massie, 447 A.2d 65 (Me. 1982). But when Lee was decided, Maine's statute included an explicit definition of "fugitive": " 'Any person convicted of a crime in the demanding state who is not in that state, unless he is lawfully absent pursuant to the terms of his bail or other release.' " Id. at 67 (quoting 15 M.R.S.A. § 201(4)(B) (1980) (alteration omitted) (emphasis added)). The Lee petitioner was convicted of crimes in both Maine and Colorado, sentenced in Maine, and then subsequently sentenced in Colorado. The Colorado sentence was imposed consecutive to the Maine sentence and the petitioner was returned, after sentencing in Colorado, to Maine's custody. Id. at 66. Because the petitioner was transferred out of Colorado pursuant to the terms of his sentence, the court concluded that he could not be considered a fugitive under Maine's express definition of that term. The Maine court did note that other jurisdictions had held that a petitioner in the position of the Lee petitioner was a fugitive, but that "[e]ach of the cases arriving at [that] conclusion . . . is premised on a statutory configuration more closely aligned than is Maine's to the Uniform Criminal Extradition Act which provides no discrete, free-standing definition of a fugitive from justice." Id. at 67.

¶ 19.     As noted above, Vermont adopted the UCEA in 1933 and the Act lacks the explicit definition of fugitive employed by the Lee court. See 1933, No. 36 (Adj. Sess.) (codified as amended at 13 V.S.A. §§ 4941-4969); 13 V.S.A. § 4943(b)(3). And "[w]hen the policies among states are identical, we must be careful that the act of crossing a state boundary does not create different rights, undermining the expressed policies of all the states." In re Hval, 148 Vt. at 549, 537 A.2d at 139. Because Vermont's Legislature adopted the UCEA in order to implement the Extradition Clause, we follow those other states that have also adopted the UCEA and the broad

definition of "fugitive" adopted by the U.S. Supreme Court.  See <u>Lovejoy</u>, 148 Vt. at 243, 531 A.2d at 924; <u>Appleyard</u>, 203 U.S. at 227.

¶ 20.    Federal law governs extradition proceedings; this point bears emphasizing in this case.  <u>Innes v. Tobin</u>, 240 U.S. 127, 131 ("[I]t was intended by the provision of the Constitution to fully embrace or rather to confer authority upon Congress to deal with [extradition]" and the Extradition Act of 1793's "provisions were intended to be dominant, and, so far as they operated, controlling and exclusive of state power.").  Under <u>In re Hval</u>, petitioner is "charged" with commission of a crime in New York.  148 Vt. at 546, 537 A.2d at 137.  And under U.S. Supreme Court precedent, petitioner is a "fugitive from justice."  <u>Appleyard</u>, 203 U.S. at 227.  Regardless of the reason for his departure from the State of New York, it is undisputed that he is not currently in that jurisdiction.  Where we are governed by federal authority, and that authority is as clear as it is here, we will not gainsay federal law.

<u>Affirmed.  Mandate to issue forthwith</u>.

FOR THE COURT:

_____

Associate Justice