**Leroy STRACHAN, Petitioner–Appellant,**

v.

**Joseph COLON, Warden, Manhattan House of Detention, Respondent–Appellee.**

**No. 1732, Docket 91–2196.**

United States Court of Appeals, Second Circuit.

Argued May 15, 1991.

Decided Aug. 7, 1991.

---

William M. Kunstler (Ronald L. Kuby, New York City, of counsel), for petitioner-appellant.

Donald J. Siewert, Asst. Dist. Atty. (Robert M. Morgenthau, Dist. Atty., Gary J. Galperin, Asst. Dist. Atty., for New York County, New York City, of counsel), for respondent-appellee.

Before CARDAMONE, PIERCE and FRIEDMAN,* Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal challenges an extradition warrant that returns a New York resident to Florida to answer charges that he shot and killed a police officer in that state 44 years ago. Extradition, of course, is aimed at bringing an offender to justice swiftly in the state where the crime was committed. Among the arguments made in this case is that where a state allows 44 years to elapse before requiring the accused to face charges, laches should apply to bar his prosecution. When justice is not forthcoming, when it is deferred too long, the result may be extreme injustice. For that reason the 40th clause of Magna Carta provided that justice be to none denied or delayed. 1 W.S. Holdsworth, *A History of English Law*, 57–58 (3rd ed. 1922). This ancient tenet of the law has been capsulized in the expression "justice delayed is justice denied." While this truism is of undoubted continuing validity, it lies beyond our authority to say whether it should be applied to this case.

We return the accused to be tried in the State of Florida on the charges pending against him in that state. In that forum he may raise the laches, due process and other arguments presented here, and in that forum, he remains under the protection of the federal Constitution. Hence, the April 19, 1991 order of the United States District Court for the Southern District of New York, (Martin, J.), denying Leroy Strachan's petition for a writ of habeas corpus is affirmed.

## BACKGROUND

This case stems from the events occurring on the evening of November 1, 1946 when Police Officer John Milledge was shot to death in Miami, Florida by a single rifle bullet. Leroy Strachan, who was in Miami that night, left Florida the next day. Settling in New York City, Strachan has lived a quiet, conventional life, marrying, raising children, working a steady job, and singing in his church choir; he has lived in the same place for 44 years under his own name, making no attempt to keep his identity and whereabouts a secret. Over the years Strachan has regularly visited his mother and daughter who live in Florida. The State of Florida had classified him as a prime suspect in the Milledge shooting immediately following the officer's death, but made no effort to locate him in New York.

In July, 1989 a witness to the crime came forward with more information. The murder case was reopened, and Florida detectives obtained a warrant for Leroy Strachan's arrest. This took place in New York City on February 15, 1990. In the space of three weeks, in quick succession, the Governor of Florida issued a demand to the Governor of New York to deliver petitioner to Florida (March 12), a Florida grand jury indicted Strachan for first-degree murder (March 21), and the Governor of New York issued a warrant of rendition (April 2).

Strachan was arraigned in New York Supreme Court on April 16 and immediately filed a petition for a writ of habeas corpus seeking his release. The state trial court's dismissal of the petition was affirmed by the Appellate Division, First Department and by the New York Court of Appeals. *See People ex rel. Strachan v. Colon*, 77 N.Y.2d 499, 571 N.E.2d 65, 568 N.Y.S.2d 895 (1991). Petitioner then filed the instant petition for habeas relief in the United States District Court for the Southern District of New York which denied it on April 19, 1991. Extradition has been stayed pending this expedited appeal.

## DISCUSSION

### I  *Fugitive Status*

Article IV, § 2, cl. 2 of the United States Constitution, the Extradition Clause,

---

* Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

governs our consideration of this case. That Clause provides

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

Once a governor of the state where the crime was committed has demanded extradition, and the governor of the asylum state has granted it, a court considering the prisoner's petition for habeas corpus "can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Michigan v. Doran*, 439 U.S. 282, 289, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). Petitioner contests only the last issue. He insists that he is not a fugitive from justice as that term is used in the Extradition Clause. Strachan has lived openly under his own name and returned to Florida frequently. Though the Florida authorities have long known he had gone to New York in 1946 to live, they made no effort to arrest him until 1990. He insists that these facts demonstrate he did not "flee" from the law.

Were we writing on a clean slate, we might be persuaded that "flight" from justice entails some consciousness of guilt and some effort to avoid arrest. Nevertheless, it has been settled for well over a 100 years that under the Extradition Clause

> [t]o be regarded as a fugitive from justice it is not necessary that one shall have left the State in which the crime is alleged to have been committed for the very purpose of avoiding prosecution, but simply that, having committed there an act which by the law of the State constitutes a crime, he afterwards has departed from its jurisdiction and when sought to be prosecuted is found within the territory of another State.

*Hogan v. O'Neill*, 255 U.S. 52, 56, 41 S.Ct. 222, 223, 65 L.Ed. 497 (1921); *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 (1911) (Holmes, J.); *Roberts v. Reilly*, 116 U.S. 80, 97, 6 S.Ct. 291, 300, 29 L.Ed. 544 (1885). Although petitioner attempts to distinguish these cases on their facts, the principle enunciated is plain and nothing counsels us to apply any different rule.

The only factual distinction meriting discussion is petitioner's argument that *Hogan* is inapposite because in that case charges were filed nearly three years after the criminal offense had occurred in Massachusetts and the accused was then found in New Jersey, while in the instant case no charges were filed against Strachan until 1990, over four decades after the crime was committed. Yet, all that is necessary to make a person a fugitive from justice is that he leave a state under whose laws he has incurred guilt. There is no requirement that the accused must leave *after* charges have been filed in order to be considered a fugitive under the Constitution. *See Roberts*, 116 U.S. at 97, 6 S.Ct. at 300 (unnecessary that party leave the state after indictment in order to be fugitive from justice). We found no case and petitioner cites none suggesting that the length of time that elapses between the commission of the crime and the indictment is a relevant concern on the issue of an accused's extradition.

Further, *Hogan* instructs that the accused's state of mind or knowledge of guilt are not proper subjects of inquiry. 255 U.S. at 56, 41 S.Ct. at 223; *see Biddinger v. Commissioner of Police*, 245 U.S. 128, 133, 38 S.Ct. 41, 42, 62 L.Ed. 193 (1917) ("one who leaves the demanding State before prosecution is anticipated or begun, or without knowledge on his part that he has violated any law, ... is nevertheless decided to be a fugitive from justice"); *Roberts*, 116 U.S. at 97, 6 S.Ct. at 300 (same). Therefore, whether Strachan's behavior suggests guilt is not a factor that may be considered in this habeas petition. The facts only demonstrate what the law requires, that is to say, the arrest warrant charges Strachan with an act that is a

crime under Florida state law, he left that state after the act was committed, and he now is found in New York State. Nothing further is necessary under the Constitution to make petitioner a fugitive.

## II *Laches*

▉ Petitioner argues further that we should apply the doctrine of laches to the Extradition Clause. Connected to this argument is his contention that due process is unavailable to an accused not prosecuted for more than four decades after a crime has been committed because witnesses are gone and memories lost. Presented as a question of laches, Strachan's argument raises a novel question of law. Petitioner and the state agree that no case has ever addressed whether laches applies to extradition cases.

We note first that the language of both the Extradition Clause and of the statute enacted by Congress implementing the Clause is mandatory, not permissive or discretionary. *See* U.S. Const. art. IV, § 2, cl. 2 (the person whose extradition is sought "*shall* ... be delivered up" to the demanding authority); 18 U.S.C. § 3182 (1988) (when extraditing state makes proper demand, the Executive Authority of the State where the fugitive is present "*shall* cause him to be arrested and secured, ... and *shall* cause the fugitive to be delivered" to the agent of the extraditing state) (emphasis added); *Puerto Rico v. Branstad*, 483 U.S. 219, 226–27, 107 S.Ct. 2802, 2807, 97 L.Ed.2d 187 (1987) (commands of the Extradition Clause are mandatory).

A brief examination of the purpose of the Extradition Clause shows that it aims to "enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed." *Michigan v. Doran*, 439 U.S. at 287, 99 S.Ct. at 534. Petitioner notes that Florida does not appear thus far to have been overly concerned with the speedy administration of justice. But, it is not up to the New York authorities, much less this Court, to question the reasonableness of Florida's actions, particularly where we have no knowledge of why that state de-

layed taking action. Florida may have failed to act sooner perhaps because, as Strachan suggests, it lacked sufficient facts to constitute probable cause for arrest prior to 1989.

The mandatory nature of the Extradition Clause also serves the greater purpose, similar to that of the Commerce Clause, of making one whole nation out of numerous states that had, until the ratification of the Constitution, largely been independent political entities, while preserving the federal nature of the United States by allowing individual states to enforce their own criminal laws without being subject to review by sister states. *See Michigan v. Doran*, 439 U.S. at 287–88, 99 S.Ct. at 534; *California v. Superior Court*, 482 U.S. 400, 406, 107 S.Ct. 2433, 2437, 96 L.Ed.2d 332 (1987) (quoting *Kentucky v. Dennison*, 65 U.S. (24 How.) 66, 100, 16 L.Ed. 717 (1861)).

Essential to the proper functioning of the Extradition Clause is its summary and mandatory nature that precludes inquiry into probable cause, potential defenses, or potential constitutional violations. To make an exception and permit the defense of laches to be examined in an asylum state would defeat these express purposes of the Extradition Clause, and would be no less inappropriate than to decide whether the indicting state had probable cause to issue a warrant for petitioner's arrest. *See Michigan v. Doran*, 439 U.S. at 290, 99 S.Ct. at 536.

In addition, case law strongly suggests that however compelling a prisoner's defense, it may not form the basis for a denial of extradition, either by the asylum state or by a reviewing court. *See California v. Superior Court*, 482 U.S. at 407–08, 107 S.Ct. at 2438 (extradition proceedings are " 'emphatically' not the appropriate time or place for entertaining defenses or determining the guilt or innocence of the charged party ... [for] [t]hose inquiries are left to the prosecutorial authorities and courts of the demanding State"); *Biddinger*, 245 U.S. at 135, 38 S.Ct. at 43 (court in extraditing state may not consider statute of limitations defense); *Shapiro v. Ferrandina*, 478 F.2d 894, 901 (2d Cir.) (alibi and

insanity defenses may not properly be considered), *cert. dism'd,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973); *People ex rel. Little v. Ciuros,* 44 N.Y.2d 825, 826–27, 406 N.Y.S.2d 449, 377 N.E.2d 980 (1978) (per curiam) (court may not consider argument that trial in the demanding state will violate petitioner's constitutional rights).

In *Bassing v. Cady,* 208 U.S. 386, 392–93, 28 S.Ct. 392, 393–94, 52 L.Ed. 540 (1908), the Supreme Court held that even though petitioner left a state with the knowledge and consent of the state authorities he was still a fugitive. This leads to the conclusion that the scienter of the extraditing state, or the reasonableness of its actions, simply is not relevant to whether extradition is proper. Thus, even assuming the police in Florida knew Strachan lived in New York and could readily be found there, their long delay in moving to extradite him is not a proper basis to bar his extradition.

Nothing in the Constitution or in the applicable federal statute indicates that a fugitive has a right to "speedy extradition" or that there exists a statute of limitations for extradition. The cases petitioner refers to regarding a state's diligence in tracking down a suspect involve the right to a speedy trial, not the Extradition Clause. We therefore hold that this is not the appropriate forum to consider the argument that laches should bar petitioner's extradition to Florida.

### III  *Other Issues Raised*

■ The other issues raised by petitioner are without merit. Briefly, for reasons substantially the same as those articulated with regard to laches, it is not our responsibility to rule on Strachan's argument that extradition to Florida will deny him due process. *See California v. Superior Court,* 482 U.S. at 412, 107 S.Ct. at 2441 (" 'surrender is not to be interfered with by the summary process of *habeas corpus* upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place.' ") (quoting *Drew v. Thaw,* 235 U.S. 432, 440, 35 S.Ct. 137, 139, 59 L.Ed. 302

(1914)); *People ex rel. Little,* 44 N.Y.2d at 826, 406 N.Y.S.2d 449, 377 N.E.2d 980 (" 'Considerations fundamental to our federal system require that the prisoner test the claimed unconstitutionality of [her] treatment by [the demanding State] in the courts of that State.' ") (quoting *Sweeney v. Woodall,* 344 U.S. 86, 90, 73 S.Ct. 139, 141, 97 L.Ed. 114 (1952)). Similarly, though he challenges Florida's motivation in seeking his return, we cannot rule on a challenge based on the motivation of the extraditing state. *Michigan v. Doran,* 439 U.S. at 290, 99 S.Ct. at 536 (judicial determinations of demanding authorities are "clothed with the traditional presumption of regularity"); *Drew,* 235 U.S. at 439, 35 S.Ct. at 138 (habeas court may not consider the motives of the state demanding extradition). Nor does the statement made by the New York Court of Appeals in *People ex rel. Little,* 44 N.Y.2d at 826, 406 N.Y.S.2d 449, 377 N.E.2d 980—implying a party could seek relief from extradition in "most unusual circumstances"—create any exception to extradition applicable to this habeas corpus petition since this petition is controlled by principles of federal constitutional law, not New York law.

We are not unsympathetic to the equities here. Applying the law in this case does not make our legal system mechanistic and unfeeling, as petitioner asserts. The policies underlying the Extradition Clause are important to the smooth functioning of the many states as one, single unit. Proceeding under the express terms of the Extradition Clause does not work Strachan any constitutionally cognizable harm. Nothing we do here will deny him an opportunity to present to the Florida courts his arguments regarding due process, laches, and the government's obligations regarding a speedy trial, all arguments he has addressed to us.

### CONCLUSION

The district court's denial of the writ of habeas corpus is affirmed. The mandate of this Court shall issue forthwith. Petitioner's motion for a stay of extradition pending the filing of petition for a writ of

certiorari in the United States Supreme Court is granted for a period of 60 days from the date of the mandate.