TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00667-CR







Ex parte Ricardo Allen Sanchez







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 48,967, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING







Ricardo Allen Sanchez applied for a writ of habeas corpus to contest his extradition
to Michigan. The writ issued, and after a hearing the relief sought was denied. Sanchez appeals
from the extradition order. See Tex. R. App. P. 31.1.

In March 1980, Sanchez was convicted in Michigan for armed robbery and 
possession of a firearm during a felony. He was sentenced to an indefinite term of imprisonment
of from three to ten years for the robbery, and to a prison term of two years for the weapons
offense. In August 1982, Sanchez escaped from the Michigan Parole Camp and traveled to Milam
County, Texas, where he has been living ever since. Sanchez was arrested in McLennan County
in August 1987. What happened then is not clear. An affidavit supporting the demand for
extradition states that Michigan authorities were informed of Sanchez's arrest and attempted to
place a detainer on him in McLennan County, but there was a paperwork failure and Sanchez was
released. Sanchez's wife testified that he was ordered extradited to Michigan by a McLennan
County court, but no one from Michigan came to get him. (1) Whatever the circumstances of his
1987 release, Sanchez remained at large until he was arrested in Bell County in August 1998 and
the current extradition proceedings began.

Sanchez's brief raises two issues, the first of which is whether the State proved that
he is a fugitive. Introduction of the governor's warrant created a prima facie case authorizing
extradition. Ex parte Cain, 592 S.W.2d 359, 362 (Tex. Crim. App. 1980). Sanchez argues that
this showing was overcome with regard to his status as a fugitive because the evidence
demonstrates that Michigan authorities have known or should have known where he was since
August 1987, when he was arrested and held for Michigan in McLennan County.

The Uniform Criminal Extradition Act does not formally define "fugitive." See
Tex. Code Crim. Proc. Ann. art. 51.13, § 1 (West 1979). A working definition is found,
however, in section two of the act, which provides, "[I]t is the duty of the Governor of this State
to have arrested and delivered up to the Executive Authority of any other State of the United States
any person charged in that State with treason, felony, or other crime, who has fled from justice
and is found in this State." Id. § 2 (emphasis added). All that is necessary to make a person a
fugitive from justice is that he leave a state under whose laws he has incurred guilt. Strachan v.
Colon, 941 F.2d 128, 130 (2d Cir. 1991) (construing Extradition Clause of U.S. Constitution). 
The court of criminal appeals has held that evidence the alleged fugitive left the demanding state
with the knowledge and permission of that state's authorities does not alter his status as a fugitive
from justice. See Ex parte Garvey, 112 S.W.2d 747, 748 (Tex. Crim. App. 1938); Ex parte
Crane, 29 S.W.2d 357, 358 (Tex. Crim. App. 1930). It is undisputed that Sanchez was charged
with and convicted of a felony in Michigan, escaped from custody, and fled to Texas. We answer
Sanchez's first issue by holding that he was shown to be a fugitive from justice within the meaning
of the extradition act.

Sanchez's second issue asks whether Michigan is estopped from seeking his
extradition because it failed to take him into custody in 1987. He argues that it is "grossly unfair
that a demanding state may fail to exercise its right to obtain the custody of an alleged fugitive,
make no effort to determine what is being done about their governor's request for rendition and
then after an additional 11 years seek to exercise the seizure of Sanchez for the same matter."

The State contests Sanchez's summary of the pertinent facts, but his argument fails
even if the facts are as he states them. The extradition act allows only four issues to be raised in
the asylum state: whether the extradition documents are in order, whether the applicant has been
charged with a crime in the demanding state, whether the applicant is the person named in the
request for extradition, and whether the applicant is a fugitive. State ex rel. Holmes v.
Klevenhagen, 819 S.W.2d 539, 543 (Tex. Crim. App. 1991) (citing Michigan v. Doran, 439 U.S.
282, 289 (1978)). The courts of the asylum state are "without authority to consider equitable
issues." Id. In rejecting Sanchez's estoppel argument, the district court observed that it was not
sitting as a court of equity.

We are referred to no Texas cases on point, but it appears to be generally agreed
that a state does not forfeit its right to demand extradition by failing to act at the earliest
opportunity. See Strachan, 941 F.2d at 131-32 (forty-four year delay; previous opportunities to
extradite); In re McBride, 254 P.2d 117, 119-20 (Cal. App. 1953) (eighteen year delay; previous
opportunities to extradite). But see Bowman v. Woods, 264 N.E.2d 151, 153 (Ill. 1970)
(demanding state forfeited extradition right by declining other opportunities during previous
thirteen years). In light of the holdings in Doran and Klevenhagen, the district court properly
refused to find that Michigan was estopped from demanding Sanchez's extradition.

The district court's order is affirmed.



 

 J. Woodfin Jones, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: April 1, 1999

Publish
1. While not evidence, Sanchez's counsel informed the district court that he had seen the
McLennan County records from the 1987 extradition proceeding, including the habeas corpus
application and the opinion of the court of appeals affirming the extradition order.



cumstances of his
1987 release, Sanchez remained at large until he was arrested in Bell County in August 1998 and
the current extradition proceedings began.

Sanchez's brief raises two issues, the first of which is whether the State proved that
he is a fugitive. Introduction of the governor's warrant created a prima facie case authorizing
extradition. Ex parte Cain, 592 S.W.2d 359, 362 (Tex. Crim. App. 1980). Sanchez argues that
this showing was overcome with regard to his status as a fugitive because the evidence
demonstrates that Michigan authorities have known or should have known where he was since
August 1987, when he was arrested and held for Michigan in McLennan County.

The Uniform Criminal Extradition Act does not formally define "fugitive." See
Tex. Code Crim. Proc. Ann. art. 51.13, § 1 (West 1979). A working definition is found,
however, in section two of the act, which provides, "[I]t is the duty of the Governor of this State
to have arrested and delivered up to the Executive Authority of any other State of the United States
any person charged in that State with treason, felony, or other crime, who has fled from justice
and is found in this State." Id. § 2 (emphasis added). All that is necessary to make a person a
fugitive from justice is that he leave a state under whose laws he has incurred guilt. Strachan v.
Colon, 941 F.2d 128, 130 (2d Cir. 1991) (construing Extradition Clause of U.S. Constitution). 
The court of criminal appeals has held that evidence the alleged fugitive left the demanding state
with the knowledge and permission of that state's authorities does not alter his status as a fugitive
from justice. See Ex parte Garvey, 112 S.W.2d 747, 748 (Tex. Crim. App. 1938); Ex parte
Crane, 29 S.W.2d 357, 358 (Tex. Crim. App. 1930). It is undisputed that Sanchez was charged
with and convicted of a felony in Michigan, escaped from custody, and fled to Texas. We answer
Sanchez's first issue by holding that he was shown to be a fugitive from justice within the meaning
of the extradition act.

Sanchez's second issue asks whether Michigan is estopped from seeking his
extradition because it failed to take him into custody in 1987. He argues that it is "grossly unfair
that a demanding state may fail to exercise its right to obtain the custody of an alleged fugitive,
make no effort to determine what is being done about their governor's request for rendition and
then after an additional 11 years seek to exercise the seizure of Sanchez for the s