In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1881

Jon Behr,

Petitioner-Appellant,

v.

Kenneth Ramsey et al.,

Respondents-Appellees.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 8304--David H. Coar, Judge.


Argued September 6, 2000--Decided October 2, 2000


  Before Manion, Kanne, and Diane P. Wood, Circuit
Judges.

  Diane P. Wood, Circuit Judge.  Petitioner Jon Behr
has been in the custody of the Sheriff of Kane
County, Illinois, since July 1998, because he has
not made child support payments for his daughter
Nicole. Several factors complicate what would
otherwise be a fairly ordinary problem. First, it
is not the State of Illinois that is seeking
support payments from Mr. Behr; it is the State
of Kentucky, to which Mr. Behr's ex-wife moved
the child without the knowledge or consent of
either Mr. Behr or any Illinois state court.
Second, Kentucky has criminalized "flagrant non-
support" of a minor child living in Kentucky, and
is seeking Mr. Behr's extradition for the purpose
of bringing charges against him under its law.
Third, the Governor of Illinois has issued a
warrant for Mr. Behr's arrest and extradition,
pursuant to a request from the Governor of
Kentucky.

  Thus, the narrow question before us in this
case is whether Mr. Behr is entitled to defeat
the pending extradition request on the ground
that, were he sent to Kentucky, the state courts
there would not be entitled to exercise personal
jurisdiction over him because he lacks
constitutionally sufficient contacts with the
state. We conclude that, in the context of
interstate criminal extradition, any defenses Mr.

Behr may have to the jurisdiction of the Kentucky courts may be presented only to the Kentucky courts. As the record reveals that the extradition request is otherwise in order, we affirm the judgment of the district court that Mr. Behr is not entitled to be released from the custody of the Sheriff of Kane County, who may proceed to execute the extradition warrant.

I

Jon and Valerie Behr were divorced in 1984 in Illinois. They have a daughter, Nicole, who was born on June 2, 1981. As part of the Judgment for Dissolution of Marriage, entered by the Circuit Court for the Twelfth Judicial Circuit, Kankakee County, Illinois, Valerie was given full custody of Nicole. Mr. Behr was ordered to pay child support of $25 per week. In 1991, the child support order was modified to increase Mr. Behr's payments to $234 per month.

At some point thereafter, Valerie and Nicole moved from Illinois to Kentucky. They did so without seeking the permission of the Kankakee court, which Valerie apparently should have sought pursuant to 750 Ill. Comp. Stat. 5/609 (West 2000). (Illinois cases hold that the parties to a divorce decree awarding custody of a child to one parent are entitled to have the child kept within the jurisdiction. See, e.g., Martinec v. Sharapata, 66 N.E.2d 103, 105 (Ill. App. 1946) (decree specified that custodial parent was to stay in Illinois); Wade v. Wade, 102 N.E.2d 356, 360 (Ill. App. 1951) (even with no provision in the divorce decree, it is against the policy of Illinois to allow a custodial parent to take a child out of the jurisdiction. But even so, the custodial parent should not be held in contempt for allowing the child to be removed from the state without the knowledge or permission of the noncustodial parent.)) Some time later, Valerie complained to a Kentucky court that Mr. Behr had failed to pay child support for Nicole. The record does not reflect how or when she made a demand for such payments from him. There is, however, an undated document labeled "Exhibit C" that is a handwritten note from Valerie Behr to the Office of Monica J. Bauer, Support Department [of the Circuit Court of Kankakee County, as Exhibit B indicates], referring to the docket number of the case and notifying the court that her address had changed to Murray, Kentucky. It is thus possible, though we cannot tell (and it does not matter for our disposition of this case), that Valerie eventually told both the court and Mr. Behr about her and Nicole's whereabouts.

On February 4, 1998, Mr. Behr was charged with

the criminal offense of flagrant non-support of his minor daughter. The Governor of Kentucky formally asked the Governor of Illinois to take Mr. Behr into custody and extradite him to Kentucky. See Ky. Rev. Stat. sec. 440.360 (Banks-Baldwin 2000). The request was made under the Uniform Criminal Extradition Act (UCEA), codified in Illinois as 725 ILCS 225/1 et seq. (and in Kentucky as K.R.S. sec. 440.150 et seq.). On July 27, 1998, Illinois Governor Jim Edgar issued a warrant for Mr. Behr's arrest, pursuant to the UCEA, 725 ILCS 225/6. Mr. Behr was arrested and taken into the custody of the Sheriff of Kane County, Illinois. He remains in custody to this day, despite the fact that Nicole is now over the age of 18. We were told at oral argument that he wears a monitoring device and has been allowed to remain at home.

Upon his arrest, Mr. Behr admitted that he has not paid child support because, he says, he is financially unable to do so. Nothing in the record would permit us to assess the truth of that representation, but it is not relevant in any event. We are most concerned here with his efforts to be released from the Kane County Sheriff's custody. He filed a writ of habeas corpus under state law in the Circuit Court of Kane County, Illinois, in November 1998. At the hearing, the only issue the court addressed was whether Mr. Behr was wanted in Kentucky. Finding that he was, the court denied his petition for release; Mr. Behr took no appeal from that decision.

Instead, he filed the present petition under 28 U.S.C. sec. 2241(c)(3) for federal habeas corpus relief on December 24, 1998, alleging that he was being held in state custody in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (We do not know why the state did not extradite him promptly after the state court ruling.) The district court examined the merits of his claims and on March 12, 2000, dismissed the petition. (Mr. Behr requested a certificate of appealability, which the district court denied, but no certificate of appealability is required in proper sec. 2241 cases like this one, and so the denial does not affect the scope of his appeal. See, e.g., Walker v. O'Brien, 216 F.3d 626, 637-39 (7th Cir. 2000); Lindstrom v. Graber, 203 F.3d 470, 473 (7th Cir. 2000).)

II

The question Mr. Behr would like us to resolve on this appeal is whether Kentucky has jurisdiction to prosecute him criminally for non-support of his minor child. He urges us to find

that it does not, because he does not have any contacts (minimum or otherwise) with the State of Kentucky: he has never been there, he has never done anything there (though we note that this is part of the problem), and he did not even know that Valerie had moved there with his daughter. The district court first found that the UCEA is constitutional, citing the Supreme Court's decision in New York v. O'Neill, 359 U.S. 1 (1959), and then ruled that the minimum contacts test found in cases like International Shoe Co. v. Washington, 326 U.S. 310 (1945), and Kulko v. Superior Court, 436 U.S. 84 (1978), does not apply to criminal cases.

In our view, this case must be approached somewhat differently, though in the end we reach the same result. The critical question is whether the extradition warrant issued by the Governor of Kentucky is valid. The governing analysis is the one set forth in the Supreme Court's decision in Michigan v. Doran, 439 U.S. 282 (1978), where the Court had to decide whether the courts of an asylum state (there Michigan) were empowered to nullify an executive grant of extradition if the demanding state failed to enunciate a factual basis to show probable cause for the charges. The Court found that interstate extradition "was intended to be a summary and mandatory executive proceeding," as derived from the language of Art. IV, sec. 2, cl. 2 of the Constitution. 439 U.S. at 288. The Extradition Clause and the UCEA incorporate the general principles of comity and full faith and credit that appear in Art. IV, sec. 1. Id. at 287-88.

In keeping in line with that intent, once the governor of the asylum state has granted extradition under the UCEA, the courts of that state have only a limited role to play. As the Supreme Court put it in Doran:

a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.

439 U.S. at 289. The Court concluded by holding that the Michigan courts had no authority to conduct an independent analysis of the probable cause that underlay the charges in Arizona that had given rise to the extradition request.

In our case, the Illinois state court has already reviewed the Doran factors and has found that Mr. Behr is subject to extradition. There is

nothing in the record that suggests we should not give our usual deference to its findings; our own review of the extradition documents shows that they are facially in order. Mr. Behr does not challenge the fact that he has been charged with a crime in Kentucky and that he is the person named in the request; and he is, in the specialized sense used in the UCEA, a "fugitive." See Strachan v. Colon, 941 F.2d 128, 130-31 (2d Cir. 1991) (all that is required is that the defendant no longer be in the state in which he committed the crime, regardless of knowledge of guilt). We have ruled before that a district court should not go beyond the Doran factors when it rules on a habeas corpus petition like this one, see Coungeris v. Sheahan, 11 F.3d 726 (7th Cir. 1993), as has the Second Circuit, see Strachan, 941 F.2d at 130.

Mr. Behr urges that his jurisdictional objections are somehow more fundamental than the probable cause argument that the Court considered in Doran, but we cannot agree. Both relate to constitutional rights enjoyed by an accused person, and we see no hierarchy of the sort Mr. Behr proposes in the Constitution itself. He concedes, as he must, that the courts of Kentucky are fully equipped to consider any arguments he may wish to present in the criminal prosecution, including: (1) the claim that Kentucky is not entitled to criminalize out-of-state behavior that has effects within its borders, such as his failure to support his daughter; (2) the claim that his Fourteenth Amendment due process right would be violated if he is hauled into a Kentucky court, relying by analogy on the civil decision in Kulko, supra; and, (3) the claim that his lack of financial resources excuses him from compliance. The proper, and indeed the only, place to bring those claims is in the courts of the demanding state. See Strachan, 941 F.2d at 132.

Anticipating this conclusion, Mr. Behr also argues that it is unfair that his wife's unilateral act of moving with the child to Kentucky should automatically expose him to criminal prosecution there. What if, he asks rhetorically, she had moved to Alaska? Or to Guam? If, taking the case in its most favorable light to him, he did not even know where Nicole was, then how can he be convicted for willful or flagrant non-support of her in the courts of a strange state?

These are two different points, to which we respond briefly. First, the Extradition Clause of the Constitution has the effect of diminishing the significance of state lines for those accused of a crime. It does not require (or even address)

extradition to foreign countries, which is governed by specific bilateral treaties with each individual nation. Any place to which Mr. Behr could be extradited under the Constitution and the UCEA would be a state or political entity (such as Puerto Rico) that would be bound to follow specific constitutional protections such as the due process clauses. We do not doubt that it would be inconvenient to be extradited to a place like Alaska or Hawaii, but the fact is that it is probably easier today to get from Kankakee to Honolulu than it was to get from Savannah to Boston at the time the Constitution was drafted. The Framers of the Constitution drew this balance, and they drew it, as the Supreme Court put it in Doran, so as to avoid "balkanization" and to avoid holding up judicial processes while the asylum state conducted preliminary inquiries. 439 U.S. at 287-88. As for his second point, if he truly had no knowledge of Nicole's whereabouts, we are confident that the courts of Kentucky will be able to take that fact into account in an appropriate way, whether as part of their jurisdictional inquiry, their assessment of the prosecution's demonstration of scienter, or otherwise.

III

  For these reasons, we Affirm the judgment of the district court.